**Esequel BANDA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 69827.

Court of Criminal Appeals of Texas, En Banc.

March 8, 1989.

Ed L. Laughlin, Temple, for appellant.

Andy J. McMullen, Dist. Atty., Hamilton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

Appellant, Esequel "Kelly" Banda, was convicted of capital murder pursuant to V.T.C.A. Penal Code § 19.03(a)(2). After the jury answered the two special issues submitted in the affirmative, the trial court assessed his punishment at death. Although appellant does not challenge sufficiency of the evidence to sustain his conviction, a brief recitation of the facts in the light most favorable to the verdict is useful.

On August 3, 1986, Merle Laird, a seventy four year old widow, was found dead in her home in Hamilton. The evidence clearly revealed that the woman had been sexually assaulted and strangled. Johnny Banda, appellant's brother, told police that on the previous evening, Saturday, August 2, he and appellant had been playing poker and drinking beer at the home of a friend in Hamilton. After about four hours, appellant and Johnny returned home, where they continued to drink beer with several friends, including Brenda Hunter, Mark Headley, Carl Harris, and appellant's brother, David. After the others had left, appellant talked about needing some money. Johnny mentioned an old lady who owned some rent houses who he thought might have some money. The brothers went over to Laird's home, knocked on the

door, and when the woman opened it, appellant hit her, knocking her to the floor, while Johnny looked for something to steal. Appellant subsequently appeared at the home of his sister, Amelia Sabedra, and brother in law, Jesse. There, he told Amelia he had just killed an old lady and had to leave town. Amelia observed blood on his clothing as well as scratch marks on his face and neck. Amelia and Jesse drove appellant to the home of his cousin, Elvira Liendo, in Comanche, and on the way there, appellant told his sister that he had sold his soul to Satan, who had instructed him to commit the crime. Amelia and Jesse left, but returned shortly with police. At about five thirty, appellant was arrested hiding in Elvira's backyard, and was later charged with capital murder. The case went to trial on March 18, 1987.

As his sole point of error, appellant complains of testimony by State's witness Brenda Hunter, of an extraneous offense, elicited over objection on direct examination. Appellant claims the incident, which concerned "appellants (sic) amorous actions towards the witness hours before the murder is not relevant and is a collateral matter and therefore was inadmissible." The complained of testimony relates to an incident which occurred at appellant's residence, and is as follows:

> Q OK. All right. Well, what happened—and he—there was some comment made about downing the beer?
>
> A Yes. Then they just started getting into an argument and everything, then Mark had to go the restroom, and that's when Kelly come over and he tried to kiss me, and I—I told him to leave me alone and he—Mark come back from the restroom.

Appellant's brief is devoid of even a single case in support of his position. Instead, he cryptically refers this Court to Tex.R.Crim. Evid., Rules 401 through 404, and concludes without any explanation, analysis or argument, that the testimony of Hunter was inadmissible because it concerned a "collateral matter." In an equally cursory manner, the State merely recites the litany of *Albrecht v. State*, 486 S.W.2d 97 (Tex. Cr.App.1972), asserting without elaboration

that the testimony was admissible to show appellant's intent and motive on the night the decedent, Merle Laird, was sexually assaulted and murdered. This testimony is admissible, according to the State, because it tends to establish motive, and hence, "it goes to the material issue of identity."

Prior to enactment of the new Rules of Criminal Evidence, this Court had begun to move away from:

> "the mechanistic invocation and application of 'general rules' and their 'exceptions' in determining the admissibility of extraneous acts of misconduct by the accused. See, e.g., *Boutwell v. State*, [719 S.W.2d 164 (Tex.Cr.App.1985) (Opinion on original submission)]. Thus, in *Williams v. State*, 662 S.W.2d 344 (Tex. Cr.App.1984) we clarified *Albrecht v. State*, [supra], observing that the list of 'exceptions' to the 'general rule' of nonadmissibility of extraneous transactions contained therein was exemplary rather than exhaustive, and was meant to be reflective of the proposition that extraneous transactions *may* become admissible, upon a showing by the prosecution both that the act is relevant to a material issue in the case and that its relevancy value outweighs its inflammatory or prejudicial potential."

*Morgan v. State*, 692 S.W.2d 877, 879 (Tex. Cr.App.1985).

Similarly, under the new Rules, an extraneous transaction is "admissible," if "relevant," that is, if tending "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be" otherwise—except, of course, "as otherwise provided by ... these rules....," Tex.R.Crim.Evid., Rules 401, 402. To the extent that such extraneous transaction is only "relevant" insofar as it tends to "prove the character of [the accused] in order to show that he acted in conformity therewith[,]"—what we have elsewhere labeled "propensity" evidence, see *Boutwell*, supra, (Opinion on Rehearing)—it is *not*, however, admissible, Rules 401 and 402, supra, notwithstanding. Tex.R.Crim.Evid., Rule 404(b). As was the case under *Al-*

*brecht,* supra, the catalogue of "other purposes" besides character conformity for which extraneous transactions may properly be used, *viz:* "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," is not exhaustive. Whether or not it neatly fits one of these categories, an extraneous transaction will be admissible so long as it logically tends to make the existence of some fact of consequence more or less probable.[1]

Here, as this Court so frequently saw under *Albrecht,* the State merely invokes several categories of purpose other than character conformity to which an extraneous transaction might be put, and boldly asserts the complained of incident fits. Nowhere does the State show *how* the incident logically tends to establish either "intent", "motive" or "identity."

In brief, as we understand it, the State's position is essentially, simply, that appellant's attempt to kiss Hunter while her date for the evening was in the restroom is indicative of his overall randy disposition on that particular night, and that proof of that disposition somehow makes it more probable that it was appellant who perpetrated the instant offense a short time later. We find this a tenuous proposition at best.

However, we also fail to see how admission of the testimony could have harmed appellant. In his abbreviated brief, appellant makes no effort to explain in what respect the evidence damaged him or how he was prejudiced. While we see minuscule, if any, probative value in the evidence, neither do we discern prejudice such that appellant would have been deprived of a fair trial. In short, we cannot conceive how the evidence could have contributed in any respect, legitimately or not, to the conviction or punishment of appellant. Any error in its admission was therefore harmless. Tex.R.App.Pro., Rule 81(b)(2).[2]

Consequently, appellant's conviction is affirmed.

McCORMICK, P.J., concurs in the result.

TEAGUE, Judge, dissenting.

Esequel Banda, henceforth appellant, was convicted by a jury of capital murder. After the jury answered in the affirmative the submitted special issues, the trial judge assessed punishment at death. Appeal to this Court is automatic. See Art. 37.071, V.A.C.C.P.

We have been informed that present counsel on appeal, who did not represent appellant at his trial, was retained by appellant's family to represent appellant on his appeal, and have also been informed that Hamilton County paid for the statement of facts in this cause. Thus, for all intent and purposes, appellant is an indigent person. Counsel has filed a brief,

---

1. Admissibility of such evidence may also be subject, of course, to a determination whether "its probative value is substantially outweighed by the danger of unfair prejudice...." Tex.R. Crim.Evid., Rule 403.

2. In our review of the record we perceive other, at least colorable claims which could have been raised on appeal in this cause. For example, in our view a plausible argument could have been constructed assailing sufficiency of the evidence, both as to guilt/innocence and as to the second special issue under V.A.C.C.P., Article 37.071. In not raising any such claims, appellant's counsel on appeal places this Court in a somewhat precarious position. It is true that in our present capacity as direct appellate court, we could endeavor to address such issues in the interest of justice. *Carter v. State,* 656 S.W.2d 468 (Tex.Cr.App.1983). As with any review of the record for unassigned error, such an endeavor necessarily occurs without benefit of adversarial gloss. Counsel for appellant may be content to have this Court ferret out his fundamental error for him. However, as a matter of fundamental fairness, the State would undoubtedly consider that it has been bushwhacked under such circumstances. For us to review the record, on the other hand, only to declare we could find no error of such magnitude as to require reversal of the conviction, might prospectively sabotage appellant's chances to establish the prejudice element of any claim of ineffective assistance of appellate counsel he may choose to make in post conviction collateral attack. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Cr.App.1986). For these reasons we have restricted our review to the sole point of error presented in the briefs in the instant case.

which consists of no more than six letter size pages, in which he presents one point of error. It took counsel almost nine months in which to prepare and file this brief. However, to be fair to counsel, I must point out that even before the brief was to be filed in this cause, counsel filed a motion to withdraw as counsel for appellant, asserting therein that appellant "had not cooperated with said counsel in his representation in the above-entitled and numbered cause, and counsel does not wish to represent said Defendant." The trial judge, believing that he did not have jurisdiction to act on the motion, forwarded same to this Court. Subsequently, counsel was informed by one of this Court's staff attorneys that he "did not have a proper motion to withdraw before this Court." Counsel apparently did not further pursue his motion to withdraw.

There is nothing in the record of this cause that might reflect or indicate whether, notwithstanding counsel's efforts to withdraw from the case, appellant has been dissatisfied with counsel's performance on appeal. The record, however, also does not reflect whether appellant has seen a copy of the brief that present counsel has filed on his behalf in this Court. Nor does the record reflect or indicate how many hours counsel spent carefully reading the record and preparing the brief that he filed. Counsel did not argue the case before this Court.

Because of its importance to my discussion, I will set out the substantive portions of the brief that retained counsel has filed in this cause on behalf of appellant. What I will set out includes the sole point of error and the argument thereunder. I will exclude any reference to the flysheet, the table of contents, the introductory comments, the prayer, and the certificate of service page of the brief. If one counts the flysheet, the table of contents, and the certificate of service page, the brief consists of six letter size pages in length. Without those pages, the brief consists of three letter size pages.

POINT OF ERROR NUMBER ONE

THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE AN EXTRANEOUS OFFENSE OVER THE OBJECTION THAT IT WAS AN EXTRANEOUS OFFENSE, WAS NOT RELEVANT AND WAS A COLLATERAL ISSUE.

ARGUMENT

During the direct-examination of Brenda Lee Hunter, at the guilt stage of the trial, Volume XIV, Page 53 of the Statement of Facts, the following took place: Question—OK. All right, Well, what happened—and he—there was some comment made about downing the beer? Answer—Yes. Then they just started getting into an argument and everything, then Mark had to go to the restroom, and that's when Kelly come over and he tried to kiss me.... Defense Counsel objected on the grounds of relevancy. Rules 401, 402, 403 and 404 of the Texas Rules of Evidence rules the admissibility of prejudicial collateral evidence such as this. The prejudicial effect of this testimony far outweighed any value the testimony has in arriving at a verdict. The appellants [sic] amorous actions towards the witness hours before the murder is not relevant and is a collateral matter and therefore was inadmissible.

The remainder of the brief consists of the prayer, which consists of 30 words, counsel's signature, and the certificate of service page.

I believe that this brief amounts to an "Anders Brief", without any showing that counsel complied with what the Supreme Court stated in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), or what this Court stated in *Gainous v. State*, 436 S.W.2d 137 (Tex.Cr.App. 1969).

Because I find that this is one of those "pay me now or pay me later" cases, in that appellant will most assuredly, after some period of time has elapsed, receive either from this Court, a federal district court, or the Fifth Circuit Court of Appeals an out-of-time appeal, my vote is to order that the brief that has been filed on appellant's behalf be stricken and that the cause be rebriefed.

Although a postconviction writ case, I find that what the Fifth Circuit Court of Appeals stated and held in *Passmore v. Estelle*, 594 F.2d 115 (5th Cir.1979), controls the disposition that should be made of this appeal. In *Passmore*, retained counsel on appeal filed a one sentence, thirteen word brief, which merely recited a prayer for relief, which is where the thirteen words are found. For reasons stated in its opinion, the Fifth Circuit found that retained counsel's representation of that defendant was ineffective, and granted the defendant an out-of-time appeal.

In *Modden v. State*, 721 S.W.2d 859 (Tex. Cr.App.1986), one of the defendant's court appointed counsel on appeal, in a case in which the defendant was assessed a premature death, filed an "Anders Brief," but later his also court appointed co-counsel filed a brief consisting of five points of error. As to the latter brief, this Court was compelled to point out the following: "The points of error are multifarious, contain incomplete or no citations to the record, and fail to state an adequate legal basis upon which complaint is made." 721 S.W.2d at 860, fn. 1. As to the "Anders Brief" that was filed in that cause, this Court stated: "We do not express any opinion as to the appropriateness of a 'frivolous appeal brief' in a capital case where the punishment was assessed at death." Given the brief that was filed in this cause, which I find amounts to nothing less than a "frivolous appeal brief," isn't it now time for this Court to express an opinion on the issue?

This Court, either under the *Rules of Appellate Procedure* or pursuant to this Court's inherent power, should order that the brief filed on behalf of appellant be stricken and that this cause be rebriefed. Because the majority of this Court declines to take that positive step, I respectfully dissent.

MILLER, J., joins this opinion.