**Jackie Ray HINKLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–87–217 CR.**

Court of Appeals of Texas,
Beaumont.

Oct. 18, 1989.

Michael A. McDougal, Conroe, for appellant.

Thomas D. Glenn, Conroe, for appellee.

## OPINION

BURGESS, Justice.

A jury convicted appellant of the murder of his wife and assessed his punishment at life imprisonment. Appellant urges eleven points of error.

Points of error one and three challenge the sufficiency of the evidence to prove appellant was the one who committed the murder or that the deceased was even murdered. At approximately 12:30 a.m., December 30, 1985, a fire was reported to the Conroe, Texas Fire Department. The fire was at appellant's residence outside the city limits. The body of appellant's wife was found in the burned rubble. A fire investigator testified he found appellant at a neighbor's house obviously intoxicated, but otherwise calm. The fire investigator determined the fire had been intentionally set for the debris contained various levels of diesel fuel, gasoline, and a mixture of the two. Upon initial questioning that evening, appellant stated he and his wife had been drinking at a tavern when they got into an argument. His wife walked home and called between 10:45 and 10:50 that evening to tell him she had arrived safely. He arrived to find the house in flames.

Mrs. Hinkle's body was almost totally burned and a .22 caliber pistol was found near her hand. The autopsy revealed she had been shot twice in the neck, with one bullet traveling through the brain and exiting at the top of the skull and the other bullet entering and remaining in the brain. A pathologist testified the primary cause of death was hemorrhaging of the brain due to the bullet wounds. A secondary cause of death was the third degree burns over her entire body. Furthermore, soot particles were found in her trachea indicating she was still alive when the fire was around her.

Investigators found a siphon hose lying underneath the fuel tank of appellant's diesel truck. A gasoline can was also recovered from a trash pile near the rear of appellant's home. The pants and shoes appellant was wearing the night of the fire were analyzed and the pants and one shoe contained various levels of diesel and gasoline. Investigators made arrangements for appellant to come into their office on December 31. When appellant failed to appear, they went to the fire scene. After a tip from a neighbor, they found appellant hiding in another neighbor's storage shed. Appellant then agreed to go the investigators' office where he gave a written statement. In that statement, appellant explained what he did from the time he left the tavern at approximately 11:00 p.m. until he returned at 12:00 a.m. He stated:

Melvin and I walked out front of Bubba's, we talked a while, Melvin said he was goind (sic) to bed, I got in my truck and went down by Midway, I didn't go in, I drove to the motorcycle shop (Bluebird) I pulled in Bluebird, turned around, I did not go in to the Bluebird or Highpockets. I left and went back to Bubba's. I went into Bubba's, this was pretty close to closing time. I told Red (who works at

Bubba's) I got a beer and Bubba told me it's time to go. When Bubba closed, I got in my truck and went straight home. I pulled in front of the house right behind my freight trailer. The house was on fire.

Appellant's former wife testified she talked to appellant shortly after 11:00 p.m. Appellant stated he was home and kept repeating "that if anything ever happened to him, he wanted me to be sure that the kids got anything that he had...." Telephone records verified a telephone call had been placed from appellant's home to the former Mrs. Hinkle in Knoxville, Tennessee at 11:19 p.m. The phone call lasted 24 minutes. Appellant never mentioned being at home during this time frame nor telephoning and talking to his former wife to any investigator or in any statement, written or oral.

■ Appellant argues in point of error three that the state failed to prove that the death of appellant's wife was caused by the criminal act of another. Appellant suggests the possibility of Mrs. Hinkle's suicide since a pistol was found in or near her hand. There is no evidence to support this hypothesis. The facts suggest otherwise. Mrs. Hinkle was shot *twice* in the brain. The house was intentionally set ablaze. There is sufficient evidence that these were the criminal acts of someone. This point of error is overruled.

■ The question of whether Mrs. Hinkle was murdered by appellant is answered circumstantially. Hard evidence, the telephone call, placed appellant in the residence at the time the shooting and fire occurred. Hard evidence, his clothing, connected appellant with accellerants used to ignite the fire. Appellant had given an alibi for the time period of the fire and shooting which was conclusively proven false. Appellant sought to avoid the authorities by hiding in a neighbor's shed. In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Beardsley*

*v. State*, 738 S.W.2d 681 (Tex.Crim.App. 1987). Appellant, in his brief, argues there are at least three reasonable inferences other than appellant's guilt. They are (1) a burglar/stranger entered the home and was surprised by Mrs. Hinkle, (2) Mrs. Hinkle was abducted while walking home and then taken home and murdered and (3) Mrs. Hinkle committed suicide. None of these are raised by the evidence. None of these are compatible with appellant being in the home from at least 11:19 to 11:33 p.m. or later. We find the evidence sufficient. This point of error is overruled.

■ The second point of error complains of the trial court's failure to give a requested instruction on circumstantial evidence and reasonable doubt. Appellant recognizes *Hankins v. State*, 646 S.W.2d 191, 197 (Tex.Crim.App.1983) (opinion on rehearing) abolished the requirement for such an instruction, but asks this court to adopt the concurring/dissenting opinion in *Hankins*. We decline to do so. This point is overruled.

■ Point of error number four complains of the prosecutor's display of a .44 magnum pistol before the jury. The prosecutor attempted to have the pistol identified by a witness. Appellant's counsel interposed an objection which was sustained. The court then instructed the jury to disregard the proposed exhibit and not consider it for any purpose. This was sufficient to cure any harm. *Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Crim.App.1981), *Barber v. State*, 757 S.W.2d 359, 362 (Tex. Crim.App.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). This point is overruled.

■ The next point of error claims the trial court committed error by admitting the telephone records into evidence because they were not properly authenticated. The records were microfiche copies of computer records of telephone calls. The state called a telephone company employee who testified (a) she was the custodian of the records, (b) it was the normal course of business for the company to keep records of all telephone calls made from each phone

and (c) the records were made at or near the time the call was being placed. Appellant urges this court to adopt additional requirements set out in *Railroad Commission v. Southern Pacific Co.*, 468 S.W.2d 125 (Tex.Civ.App.—Austin), *writ ref'd n.r.e.*, 471 S.W.2d 39 (Tex.1971) concerning electronically generated records. These requirements are (a) the particular computer equipment is recognized as standard and (b) the records were prepared by persons who understand the operation of the equipment and (c) whose regular duty was to operate the equipment. We find *Longoria v. Greyhound Lines, Inc.*, 699 S.W.2d 298 (Tex.App.—San Antonio 1985, no writ), which declines to follow *Railroad Commission, supra*, the better reasoned case. TEX.R.CRIM.EVID. 803(6) is the successor to TEX.REV.CIV.STAT.ANN. art. 3737e (repealed). Neither the current rule nor the statute imposed any additional predicate on computer generated records. Our highest courts, and their advisory committees, had the opportunity when the rules of evidence were adopted to address computer generated records and to adopt the requirements of *Railroad Commission, supra*, yet they declined to do so. We also decline. The records were properly authenticated and properly admitted. This point of error is overruled.

 The next two points of error allege the trial court erred in allowing the prosecutor to read to the jury, over appellant's objection, the enhancement paragraph "when it was obvious that the state could not prove the allegation" and in failing to grant a mistrial. When the jury was brought in for the punishment phase, defense counsel stated he had objections to the state reading the enhancement paragraph. The court stated the objections would not be entertained prior to the reading of the enhancement paragraph. The state read the enhancement paragraph and the court asked appellant for his plea. After appellant pleaded "not true", the state made a short opening statement and then offered a "pen packet" into evidence. Appellant's counsel began making objections and the court ordered the jury retired. The state then withdrew its offer of the "pen packet" and moved to abandon the enhancement allegation. The jury returned into court and were instructed not to consider the reading of the enhancement paragraph or the offer of the exhibit for any purpose. Appellant's complaint is once the enhancement allegations are read and an exhibit tendered, no instruction can cure the impression left in the jurors minds. Appellant should have filed a motion in limine concerning the enhancement paragraph as he obviously had detected some defects in the state's proof. However, the trial court should have allowed the objections to be made prior to the reading of the allegation and conducted a hearing outside the presence of the jury to determine the method of proof to be used. If the hearing that was eventually conducted had been conducted prior to the reading of the enhancement allegations, this point of error would not exist. In any event, the reading of enhancement allegations and the attempted proof thereof is not reversible error where there is no showing of bad faith on the part of the state and the jury was properly instructed. *Evans v. State*, 402 S.W.2d 756 (Tex.Crim.App.1966). These points are overruled.

 Point of error number eight alleges error in the submission of the parole law charge. We analyze this point under the dictates of *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (opinion on rehearing). The statutory charge was given, but the traditional or curative instruction present in *Rose* was not. Appellant had no previous admissible criminal history. While there was a passing reference to "not life without parole", the state did not argue the parole charge. Thus, all this court is left with is the heinous nature of the crime. Not only did appellant shoot his wife twice, but he started the fire while she was still alive. Appellant appeared calm shortly after the fire and had telephoned his ex-wife either after he had shot his wife, but before he started the fire or before the murder and arson. In *Evans v. State*, 760 S.W.2d 760 (Tex.App.—Beaumont 1988, pet. ref'd), this court recognized the "grizzly" facts of a case can be most

important. To paraphrase Judge Teague in his concurring opinion in *Rose, supra,* in light of the facts of this case, there is not a reasonable possibility that any rational jury would have returned any other verdict than life imprisonment or a significant number of years. Having attempted to analyze this point under TEX.R.APP.P. 81(b)(2), we overrule this point of error.

 The next point of error alleges reversible error as a result of improper jury argument. The complained of argument:

> [PROSECUTOR]: [A]ll you do is to assess the punishment to meet the facts of this case. I tell you what, the punishment phase is short, it always is short. You know, I mean, would it make any difference if I brought you two or three unauthorized use of motor vehicle or two or three theft convictions? It doesn't make any difference at all in this case.

The argument was improper, but the trial court sustained the objection and instructed the jury to disregard the prosecutor's comments. This was sufficient to cure any error. *Thompson v. State, supra.* This point of error is overruled.

Point of error number ten avers the trial court erred in failing to grant a mistrial based upon improper jury argument. Immediately following the portion of argument noted in the previous point of error, the prosecutor stated:

> You learned what that actually did to the punishment range in voir dire. You learned that all it did was raise the bottom from five to 15 years.

Once again, this comment was improper. But, once again, the jury was instructed to disregard and this was sufficient. This point is overruled.

The final point of error contends the trial court erred in submitting a special issue to the jury as to whether a deadly weapon was used or exhibited during the commission of the offense because appellant was given no notice that the state would seek such a finding. Appellant argues that since the indictment alleged the death was caused "by shooting ... with a firearm and by burning said ...", this would allow a finding by the jury that the death was caused by burning rather than by the use of the firearm. This, however, does not address the question of notice. When the use of a deadly weapon is alleged in an indictment, this is sufficient notice that the state may seek a finding. *Ex parte Patterson,* 740 S.W.2d 766 (Tex. Crim.App.1987). The indictment was adequate notice to appellant. The special issue was properly presented to the jury and the court was correct in accepting the jury's finding and placing it in the judgment. This point of error is overruled.

The judgment is affirmed.

AFFIRMED.