Herberto CADDELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–92–00124–CR.

Court of Appeals of Texas,
Tyler.

Aug. 31, 1993.

John J. Eastland, Tyler, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

HOLCOMB, Justice.

Appellant was convicted by a jury of engaging in organized criminal activity which also assessed his punishment at confinement for life and a $10,000 fine. We will affirm.

Appellant contends the trial court erred by: (1) allowing into evidence testimony regarding an extraneous offense; (2) that there was no evidence to support his conviction of engaging in organized criminal activity; (3) there was insufficient evidence to support his conviction of engaging in organized criminal activity; and (4) in overruling his motion for an instructed verdict of not guilty. In view of the fact that Appellant's points of error numbers two, three, and four are required to be decided on the sufficiency of evidence, pursuant to TEXAS RULE OF APPELLATE PROCEDURE 74(f), these three points will be discussed together.

The standard for reviewing postconviction sufficiency of the evidence questions on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989); *Jackson v. State,* 672 S.W.2d 801 (Tex.Cr.App.1984). In a circumstantial evidence case it is not necessary that every fact point directly and independently to the guilt of the accused, the cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. Circumstantial evidence cases have no different standard of review than those cases supported by direct evidence. We, as a reviewing court, are required to position ourselves as a final, due process safeguard, ensuring only the rationality of the fact finder. In reviewing the sufficiency of the evidence, we must consider all of the evidence which the jury was per-

mitted to consider, whether rightly or wrongly admitted. *Hinkle v. State,* 779 S.W.2d 504, 507 (Tex.App.—Beaumont 1989, pet. ref'd), *citing Beardsley v. State,* 738 S.W.2d 681 (Tex.Cr.App.1987); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Cr.App.1988); *Thomas v. State,* 753 S.W.2d 688 (Tex.Cr.App.1988). Using the above standards, we will now review the evidence in the light most favorable to the verdict.

The Tyler Police Department divides Tyler into four sections. North Tyler is known as "Section 4." The "graveyard" is a section of North Tyler which is particularly notorious for drug trafficking. Drug dealers sell crack cocaine in that area at all hours of the day or night. There is no other place in Tyler where drug trafficking is so open and notorious.

The streets of Wilson and Ellis are included in the "graveyard." Drug dealers mainly sell crack cocaine. The crack cocaine is exchanged through a hand-to-hand trade; a buyer drives to the intersection and a dealer approaches the car. In this manner, crack cocaine may be purchased without leaving the car. Occasionally, the buyers will park their car nearby and approach the area on foot in order to avoid being stopped by police on their way out. Sometimes the buyers will smoke the rock of crack in the "graveyard" so they do not have to carry it with them. A rock of crack cocaine sells for about $20.00.

The officers from the tactical unit of the police department decided to investigate the organizational aspect of the drug peddling. They set up a surveillance camera in an abandoned building. From this covert location, the officers filmed the activity in the "graveyard" over a period of several days. The film graphically depicts the drug trafficking at the "graveyard." Appellant is featured prominently in the film. One of the first scenes in the film shows Appellant taking something from the trunk of his car and placing it in the bushes. An officer testified that this action is consistent with a drug dealer stashing drugs someplace close to them where they can easily retrieve it. Drug dealers apparently do not like to keep the illegal drugs on their person, lest law enforcement officers appear. The film also shows cars and taxis arriving at the "graveyard." When a vehicle arrives, individuals approach the vehicle at the intersection and exchange money for narcotics. The film also portrays people actually loading a "straight-shooter" pipe and smoking the cocaine. Since the police department used officers who normally work in North Tyler, the officers were able to recognize many of the perpetrators from patrol.

The tapes depict the same individuals over and over again who were supplying, delivering, dispensing, and using the rocks of crack cocaine. The film also shows "controlled" buys where an undercover officer purchases crack cocaine from the sellers. Appellant does not appear to sell the crack cocaine himself; rather, he gives the crack to a "middle man," one such person identified as Michael Rose, who was identified as receiving crack cocaine from Appellant in the film. Rose and others, who were not identified, but were seen being given what was presumably cocaine, would then exchange what they received with the various buyers. Testimony was adduced that Appellant's role, in explaining the film and his role in the organization, is a supplier and "wholesaler." He provided the rocks of cocaine to street dealers. Testimony showed the "Retailers" stood out in the street all day peddling the cocaine to the drive up customers. Testimony was adduced that it is common for the suppliers to throw their "stash" in the bushes. It was further testified that a supplier rarely makes the transactions himself. Several months went by while the officers tried to identify the individuals that were involved in the selling of cocaine, and finally Appellant, along with others, was indicted for these offenses. When the officers obtained the indictments on Appellant and the other individuals, they proceeded to arrest Appellant on December 13, 1991. As the officers approached Appellant, he threw an object about 40 feet which landed at Detective Mike McCarty's feet. McCarty testified he recovered a pill bottle containing 91 rocks of crack cocaine, which this amount of cocaine was testified to be worth approximately $1,820.00.

To establish Appellant's guilt of organized criminal activity, it must be shown

that he committed or conspired to commit an enumerated crime with the specific intent of participating in the criminal activity with a combination of persons and that he or she also possessed the intent to participate in the profits of the combination. Thus, in order to prove intent, the State must show that the accused knew of the criminal activity of the group. *Barber v. State,* 764 S.W.2d 232, 234 (Tex.Cr.App.1988); *Richardson v. State,* 763 S.W.2d 594, 596 (Tex.App.—Corpus Christi 1988, no pet.); *Nickerson v. State,* 686 S.W.2d 294, 297 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Since direct evidence is rarely available to prove a conspiracy hatched in secret, circumstantial evidence including the conspiratorial conduct must be relied on to prove the essential elements of the crime. *Farrington v. State,* 489 S.W.2d 607 (Tex.Cr.App.1972). Similar methods of operation together with joint activities and relationships support the finding of a single conspiracy. *United States v. Ochoa,* 609 F.2d 198 (5th Cir.1980); *Kennard v. State,* 649 S.W.2d 752, 764 (Tex.App.—Fort Worth 1983, pet. ref'd). Appellant, in the present case, does not specify which elements were not proven by the State, but he claims there was no evidence to tie him to the distribution of the crack cocaine. We disagree. Evidence was presented to the jury that is sufficient. We find the evidence is sufficient to sustain all the elements of engaging in organized criminal activity. The State presented evidence that Appellant was with his co-conspirators throughout the filming of the group's activities. The jury could have concluded that Appellant was a supplier or wholesaler of the crack cocaine, even though he did not make any street deals himself. The film and testimony reflected that he would bring the cocaine and leave it in the bushes, and there he supplied the drug to others who sold the cocaine to the various buyers, including undercover officers who testified. This was all present in the film. The chemist's testimony verified that the substance purchased through the undercover officers was crack cocaine. Therefore, we conclude Appellant's intent may be inferred from the circumstances of the crime. As set forth, viewed in the light most favorable to the conviction, we find there was sufficient evidence for a rational trier of fact to have found all of the elements of engaging in organized criminal activity beyond a reasonable doubt. Points of error numbers two, three, and four are overruled.

We now turn to whether or not the court committed error in allowing into evidence testimony regarding an extraneous offense. Over Appellant's objection, the State was allowed to offer evidence that Appellant threw away a pill bottle containing 91 rocks of crack cocaine. The State argued that this evidence was admissible under TEXAS RULE OF CRIMINAL EVIDENCE 404(b) to show motive, opportunity, intent, preparation, plan, knowledge, identity, design, scheme, and the act of the agreement on the part of Appellant. Appellant further claims that this evidence was bolstering. Since Appellant was indicted for engaging in organized criminal activity in September 1991, Appellant argues that the admission of the 91 rocks of crack cocaine stemming from the defendant's arrest in December 1991, was too remote from the acts alleged in the indictment for engaging in organized criminal activity.

In considering whether or not the court committed error, it is important to note initially that the trial judge's decision to admit an extraneous offense should be given due deference. *Cantrell v. State,* 731 S.W.2d 84, 90 (Tex.Cr.App.1987). Absent a clear abuse of discretion, such a determination should not be disturbed on appeal. *Templin v. State,* 711 S.W.2d 30, 33 (Tex.Cr.App. 1986). While it is well established an accused may not be tried for some collateral crime or for being a criminal generally, circumstances may exist however which make extraneous offenses admissible. As an appellate court, we are required to examine all the evidence to determine whether, in light of the extraneous offense, the probative value is not substantially outweighed by its prejudicial effect. *See Banda v. State,* 768 S.W.2d 294, 296 (Tex.Cr.App.1989), *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 270; *McFarland v. State,* 845 S.W.2d 824 (Tex.Cr. App.1992). An extraneous offense is relevant if it logically tends to make the existence of some fact of consequence more or less probable. *Banda,* 768 S.W.2d at 296.

In the present case, the trial judge determined that the evidence was relevant and that the probative value of this evidence outweighed its prejudicial effect. We find the trial court did not commit reversible error when it allowed Detective McCarty to testify that Appellant threw down 91 rocks of crack cocaine on the day he was arrested. It is settled that where one offense or transaction is one continuous episode, or another offense or transaction is a part of the case on trial, or blended or closely interwoven therewith, proof of all facts is proper. *Maynard v. State*, 685 S.W.2d 60, 66 (Tex.Cr.App.1985). We find Appellant's possession of the 91 rocks was part of one continuous episode in which Appellant and his confederates participated to distribute and sell crack cocaine. His possession of the cocaine was a part of the continuous episode of drug distribution and sales which he in turn would sell to his distributors, and this evidence was properly admitted to show one continuous episode to establish, maintain, or participate in a combination or in the profits of the combination when he committed, or conspired to commit, delivery, dispensation, or distribution of the cocaine to others who sold it. It could be admitted as circumstantial evidence of Appellant's intent, as his intent to act with others could not necessarily be from an individual overt act of handing out drugs. *See Plante v. State*, 692 S.W.2d 487, 490 (Tex.Cr.App. 1985), and *Strong v. State*, 805 S.W.2d 478 (Tex.App.—Tyler 1990, pet. refused), for the proposition that extraneous evidence is admissible in trial for engaging in organizing criminal activity to show intent. Since Appellant's intent could be inferred from his possession of the crack cocaine on December 13, 1991, the probative value of the offense about which McCarty testified is not substantially outweighed by the danger of unfair prejudice. The trial court included a limiting instruction in the jury charge regarding the extraneous offense. The instruction charged the jury as follows:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment of this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if he did, and even then you may only consider the same in determining the knowledge, intent, identity, act of agreement, design or scheme of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

The prejudicial effect of an extraneous offense is lessened by a charge limiting the jury from consideration of the extraneous offense. *McFarland v. State*, 845 S.W.2d at 837; *Plante v. State*, 692 S.W.2d at 494; *Keller v. State*, 818 S.W.2d 425 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Appellant's point of error number one is overruled.

The judgment is affirmed.