**Kendrick J. RAINEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 12–93–00007–CR.**

Court of Appeals of Texas,
Tyler.

April 26, 1994.

49

Lajuanda L. Lacy, Tyler, for appellant.

Amy Blalock, Tyler, for appellee.

HOLCOMB, Justice.

A jury found Appellant guilty of engaging in organized criminal activity and assessed punishment at 60 years imprisonment. In a single point of error, Appellant contends that the evidence is insufficient to sustain the jury's verdict beyond a reasonable doubt. We will affirm.

The standard of review for both direct and circumstantial evidence is whether, after reviewing all evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989); *Marroquin v. State,* 746 S.W.2d 747 (Tex.Cr. App.1988); *Jackson v. State,* 672 S.W.2d 801 (Tex.Cr.App.1984); *Caddell v. State,* 865 S.W.2d 489, 490 (Tex.App.—Tyler 1993, no pet.).

The indictment against the Appellant, in pertinent part, reads as follows:

... that on or about the 22nd day of September, 1991, and anterior to the presentment of this Indictment, in the County of Smith, State of Texas, GLENN T. TILLEY, KENDRICK J. RAINEY, HERBERTO L. CADDELL, LELIOUS JOHNSON, JAMES C. MARTIN, RILEY WICKWARE, ANTONIO L. WASHINGTON, ALBERT C. WOOTEN, DAVID J. JONES, RICHARD CHOICE, JR., RACHEL E. JOHNSON, SHERMAN L. JOHNSON, DARRELL C. LEMMONS, JOHN W. GAMBLE, and MICHAEL D. ROSE, hereinafter styled Defendants, did then and there, with intent to establish, maintain, and participate in a combination and in the profits of a combination, conspire to commit the offense of unlawful delivery, dispensation, and distribution of a controlled substance, to-wit: Cocaine, in the amount of less than twenty-eight (28) grams by aggregate weight including any adulterants and dilutants, and the said KENDRICK J. RAINEY did then and there agree with one or more of the following persons, to-wit: GLENN T. TILLEY, HERBERTO L. CADDELL, LELIOUS JOHNSON, JAMES C. MARTIN, RILEY

WICKWARE, ANTONIO L. WASHINGTON, ALBERT C. WOOTEN, DAVID J. JONES, RICHARD CHOICE, JR., RACHEL E. JOHNSON, SHERMAN L. JOHNSON, DARRELL C. LEMMONS, JOHN W. GAMBLE, and MICHAEL D. ROSE, to engage in conduct constituting said offense, to-wit: to intentionally and knowingly deliver a controlled substance, to-wit: Cocaine, in the amount of less than twenty-eight (28) grams by aggregate weight including any adulterants and dilutants to CHARLES BLEDSOE, REGGIE CONLEY, and TONY HAIRFORD, or person or persons unknown to the Grand Jury, and in pursuance of such agreement and in furtherance thereof, the said KENDRICK J. RAINEY and one and more of the said other Defendants performed overt acts as follows:

. . . .

This was followed by a list of 41 alleged overt acts.

The evidence at trial reflected that since 1985, the Tyler Police Department had been concerned about the crack cocaine trafficking at the intersection of West Wilson and North Ellis Streets in northwest Tyler. This area was known as the "graveyard" because of the nearby Oakwood Cemetery. A tactical team was assembled to surreptitiously video-tape drug activity at the "graveyard" between 8:30 p.m. and 2:00 a.m. from September 20 to 22, 1991. They placed an 8mm video camera equipped with a light enhancing night scope in a vacant building within 150 to 200 feet from the activity they recorded. The purpose was to video tape as many of the participants as possible to determine the extent of any organization and to be able to identify each member. It had proven difficult to apprehend drug dealers because "look-outs" warned the dealers when officers appeared at the scene by yelling "Headache" or "Five–O." The dealers would then stash or drop their dope and flee from the scene.

Two officers operated the video camera in the building. One of these officers was John Brown who was using binoculars and had worked extensively in this area of town and could identify the participants. While the officers were video taping the drug trafficking, undercover officers drove into the area and purchased crack cocaine from the various dealers. They made some ten (10) drug "buys" from six (6) of the other named members of the combination during this three day period. When they made "purchases" from the dealers, the undercover officers wore a small transmitter which was "patched through" to the video camera; the resulting oral portion was fairly clear. Department of Public Safety chemists testified that the substance purchased by the undercover officers was crack cocaine.

At trial, the jury saw the tapes obtained in the operation. While the tape was played, Brown explained what was happening and identified the participants. The tape and the officer's testimony reflected that it was "a drive-through" operation, whereby most of the cocaine buyers drove automobiles into the area. The dealers in turn would approach the vehicles and exchange the cocaine by hand-to-hand trade. The purchasers would usually select a particular rock of cocaine from the rocks held in the dealer's outstretched hands. More often than not, more than one drug dealer would approach a given car and compete to make a sale.

The evidence showed Herberto Caddell and David Germaine Jones to have been the main "wholesalers." Appellant and the other dealers, after obtaining the crack from Caddell or Jones, would solicit, display, and deliver the "crack," thereafter giving Caddell or Jones the money they received. Brown testified that, based on his experience in narcotics investigations, the dealers were paid with either money or crack cocaine. The video tape depicted various individuals, including some of the members of the combination, smoking crack cocaine, while others acted as look-outs.

Appellant argues that the evidence failed to show that he "conspired to commit and collaborate" with three or more persons, that there is no evidence of any agreement, and that the evidence does not show that he performed any overt act in furtherance of a conspiracy. Appellant maintains that he was merely present in the area. He also argues that since the individuals involved competed

against each other for drug sales, it was impossible that any agreement existed.

■ In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused. *Beardsley v. State,* 738 S.W.2d 681 (Tex.Cr. App.1987). The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Id.* Circumstantial evidence cases have no different standard of review than those supported by direct evidence. *Geesa v. State,* 820 S.W.2d 154 (Tex.Cr.App.1991). As a reviewing court, we are required to position ourselves as a final, due process safeguard ensuring only the rationality of the fact-finder. *Moreno v. State,* 755 S.W.2d 866 (Tex.Cr. App.1988). In reviewing sufficiency of the evidence, we must consider all of the evidence which the jury was permitted to consider, whether rightly or wrongly admitted. *Thomas v. State,* 753 S.W.2d 688 (Tex.Cr. App.1988); *Caddell,* 865 S.W.2d at 490–91.

A person commits the offense of engaging in organized criminal activity when he intends to establish, maintain, or participate in a combination, or in the profits of a combination, and he commits or conspires to commit delivery of a controlled substance. TEX.PE-NAL CODE ANN. § 71.02 (Vernon Supp.1992); *Barber v. State,* 764 S.W.2d 232, 234 (Tex.Cr. App.1988).

A "combination" is defined as follows:

[T]hree or more persons who collaborate in carrying on criminal activities, although:

(1) participants may not know each other's identity;

(2) membership in the combination may change from time to time; and

(3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.

TEX.PENAL CODE § 71.01(a). "Conspires to commit" is defined as:

[A] person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit

may be inferred from the acts of the parties.

TEX.PENAL CODE § 71.01(b).

■ Since direct evidence is rarely available to prove a conspiracy, circumstantial evidence including the conspirator's conduct must be used to prove the essential elements of the crime. *Farrington v. State,* 489 S.W.2d 607 (Tex.Cr.App.1972); *Caddell,* 865 S.W.2d at 492. Similar methods of operation together with joint activities and relationships support the finding of a single conspiracy. *United States v. Ochoa,* 609 F.2d 198 (5th Cir.1980); *Kennard v. State,* 649 S.W.2d 752, 764 (Tex.App.–Fort Worth 1983, pet ref'd). The Appellant's intent can be determined from his words, acts, and conduct. *Childress v. State,* 807 S.W.2d 424, 434–35 (Tex.App.—Amarillo 1991, no pet.). The statute specifically provides that the existence of the necessary agreement can be inferred from the acts of the parties. TEX.PENAL CODE ANN. § 71.01(b) (Vernon Supp.1992). The gravamen of the offense is "working together with a specified number of others in specified criminal activities" to accomplish the crime. *See Barber,* 764 S.W.2d at 236; *Lucario v. State,* 677 S.W.2d 693 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

■ The direct and circumstantial evidence, viewed in the light most favorable to the verdict, tended to show that Appellant was engaged in organized criminal activity. Brown identified Appellant arriving at the scene in a car with Caddell on September 20, 1991. Caddell is seen "stashing" the crack. Later, Appellant approached a vehicle, and after first talking to the driver and then the passenger, Appellant held out his hand. The passenger appeared to take something from Appellant's hand (inferentially crack) and pass something back to Appellant (inferentially money). Appellant then appeared to hand something to Caddell (inferentially money). Brown testified that based on his training and experience in observing drug transactions, Appellant had made a sale. After this, undercover officer Reggie Conley drove into the "graveyard" several times and purchased crack cocaine from the other named conspirators or members of the com-

bination, Michael Rose, Albert Wooten, Antoine Washington, David Jones, and Riley Wickware. Officers Tony Hairford and Charles Bledsoe also purchased crack from conspirators Riley Wickware, Lelious Johnson, and James Carl Martin. Appellant was also identified by Brown making another sale, as well as acting as a "look-out" for other street dealers. There was evidence that Appellant did not live in the "graveyard" area, but in Lindale. Brown testified that people who hang out in the "graveyard" but do not live there were involved in the "crack" trade.

The video tape and the testimony revealed factors which would show Appellant and at least two others were involved in a combination under Penal Code 71.01 and 71.02. The activity video taped at the "graveyard" showed the following:

(1) *Common Location*—At least ten (10) buys were made from named individuals at the "graveyard" area;

(2) *Common Purpose*—They were all involved in selling crack cocaine;

(3) *Common Wholesalers*—Caddell and Jones;

(4) *Common prices*—Most of the "rocks" of cocaine sold for $20.00, which would be some evidence of a tacit agreement as to price;

(5) *Common Protection*—They all acted as look-outs for the police, protecting each other.

The fact that the evidence showed some of the same individuals working for different individuals does not negate a combination. Appellant argues that there were many individuals dealing in drugs, that they were disorganized, that they did not help each other, that he had little contact with any of the named defendants (leaving out any of the many unidentified dealers in the video), and that, while they may have known each other, they were in competition. He argues, in essence, that the State must prove that the drug dealers had established an efficient, well organized cartel in order to establish a concerted effort to gain a profit. We do not agree.

Viewing the evidence in the light most favorable to the verdict, the evidence was sufficient for a rational trier of fact to have found all of the elements of engaging in organized criminal activity beyond a reasonable doubt.

The judgment is affirmed.

