Michael Allen HAYDEN, Appellant

v.

The STATE of Texas, Appellee.

No. 09–87–036 CR.

Court of Appeals of Texas,
Beaumont.

June 8, 1988.

Max B. Turner, Jr., Conroe, for appellant.

Thomas D. Glenn, Asst. Dist. Atty., Conroe, for appellee.

OPINION

BURGESS, Justice.

A jury convicted appellant of possession of more than 400 grams of phenylacetone,

a controlled substance. The court assessed punishment at thirty years' confinement in the Texas Department of Corrections and a fine of $5000. We affirm.

■ The first point of error challenges the sufficiency of the evidence. Appellant relies upon *Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App.1987) wherein the court of criminal appeals reiterated the definition of possession and analyzed the case under circumstantial evidence criteria. In *Humason*, the court found the state had not excluded every reasonable hypothesis and ordered an acquittal.

Shortly after noon on February 11, 1986, officers of the Montgomery County Organized Crime Unit received information about the existence of a clandestine laboratory used for manufacturing a controlled substance. The officers went to the location around 2 p.m. to confirm the address and initiate surveillance. At that time they noticed a smell consistent with an operating clandestine laboratory. They also wrote down descriptions and license plate numbers of two vehicles at the residence. The officers then prepared a probable cause affidavit and application for a search warrant. A warrant was issued and later executed at approximately 9:20 that evening. Upon arriving at the residence, one group of officers secured the house and another began to secure a detached garage. The officers who were assigned the garage testified that they were able to see into the garage through small openings in windows and observed the laboratory working. The other officers entered the house and found appellant in a rear bedroom. They found no weapons or illegal contraband on appellant's person, but there were controlled substances and drug paraphernalia in plain view. The smell of the lab was also evident in the house.

A search of the garage revealed two flasks filled with a boiling liquid and connected to other apparatuses in a manner consistent with the manufacture of a controlled substance. Five different officers testified there was a light on in the garage prior to and during the search. Several officers testified the lab was operating, the flasks were hot and the odor was very strong. There were also various chemicals and chemical equipment located in the garage. Two fingerprints of appellant were found on one of the flasks. The officers also found chemicals and chemical apparatuses in the trunk of appellant's automobile along with ammunition of the same caliber as a pistol found in the garage.

Appellant testified that he had come to the home only to give a former co-worker a ride from Conroe back to Arlington, Texas. He stated he had purchased the automobile from this individual the week before and the individual had offered to reduce the balance due in exchange for the ride. Appellant testified he had never been to the house before and was completely unaware of the clandestine laboratory. He said he arrived around 2 p.m. and spent the afternoon watching television and replacing the spark plugs in a pick-up truck. At approximately 8 p.m., he was asked to try to work on the pick-up's carburetor and he went into the garage to look for some tools. Appellant testified it was after dark and there was no light in the garage. He stated he felt around for the tools and in doing so apparently touched items in the garage. He did not touch anything hot. He noticed a strange odor, but did not know what it was. He stated he was in the back bedroom attempting to call his wife when the officers entered the house. He did not notice any of the paraphernalia in the bedroom. The standard of review is whether after viewing the evidence in the light most favorable to the verdict, any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Huffman v. State*, 746 S.W.2d 212 (Tex.Crim.App.1988). The standard is the same regardless of whether the evidence is direct or circumstantial. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983) (opinion on state's motion for rehearing). In a circumstantial evidence case, this includes excluding every other reasonable hypothesis except the guilt of the defendant. *Humason*, 728 S.W.2d at 366.

But for the fingerprint evidence, this case would fall within the parameters of

*Humason.* The jury was entitled not to believe appellant's version of how the fingerprints got on the flask. That it chose not to do so is understandable. Five officers contradicted appellant's claim that the garage was dark. Several officers testified the flasks were boiling and a strong smell was present at 9:20. The officers also testified the smell was present at 2:00, some seven hours earlier. By appellant's own admission, the only time his fingerprints could have gotten on the flasks were between 2:00 and 9:30 p.m. Thus, the state did not have to exclude the possibility that the fingerprints could have gotten on the flasks at some other time or location. The state sufficiently proved the "affirmative link" between the appellant and the controlled substance. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). Point of error number one is overruled.

■ Appellant next complains of the introduction of a laboratory report from the Texas Department of Public Safety laboratory. The report identified the contents of the two flasks as phenylacetone. Appellant contends that the admission of this report under *TEX.R.CRIM.EVID. 803(6)* violated his rights of confrontation and cross-examination guaranteed by the sixth and fourteenth amendments of the United States Constitution and article I, section 10 of the Texas Constitution.

A Department of Public Safety chemist testified he was the current supervisor of the laboratory and established the predicate necessary under *rule 803(6)*. Appellant argues the points on two grounds. He urges the state did not show the unavailability of the chemist who actually performed the tests. Unavailability is not a prerequisite to the use of *rule 803(6)*. Appellant further argues that the reports lack the "indicia of reliability" and the circumstances of preparation indicate lack of trustworthiness. *Rule 803(6)* is, essentially, a codification of former TEX.REV.CIV. STAT.ANN. art. 3737e, *repealed by,* ch. 685, sec. 9, 1985 Tex.Gen. & Spec.Laws 2474, or the "Business Records Act." *Kent v. State,* 374 S.W.2d 671 (Tex.Crim. App.1963) established that under the Act,

an expert may testify about test results obtained by another chemist. *Coulter v. State,* 494 S.W.2d 876 (Tex.Crim.App.1973) held that a custodian of laboratory records could testify about tests made by a chemist under his supervision.

In the instant case, the supervisor of the laboratory was not the supervisor when the tests were made. The witness testified that the records reflected the tests were run correctly, he had personally run many tests on the test instrument and there was nothing to indicate that the records were not prepared properly and in the ordinary course of business. The witness' testimony indicates the records contain sufficient "indicia of reliability" to insure their trustworthiness commensurate with the constitutional rights of confrontation and cross-examination. *Coulter,* 494 S.W.2d at 882; *see also Cole v. State,* 735 S.W.2d 686, 691 (Tex.App.—Amarillo 1987, no pet.). These points of error are overruled. The judgment of the trial court is affirmed.

AFFIRMED.