Toniann HUFF, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–93–01870–CR.

Court of Appeals of Texas, Dallas.

Feb. 2, 1995.

Discretionary Review Refused June 14, 1995.

Mark W. Stevens, Galveston, for appellant.

Sue Korioth, Dallas, for appellee.

Before THOMAS, C.J.,[1] and OVARD and WHITTINGTON, JJ.

## OPINION

THOMAS, Chief Justice.

Toniann Huff appeals her conviction for theft of property valued at $20,000 or more. Following a jury trial, the trial court assessed appellant's punishment at ten years' confinement, probated for ten years with a condition that appellant serve 180 days in jail. The court ordered restitution in the amount of $72,317.29. In fifteen points of error, appellant complains generally about (i) the sufficiency of the evidence to support her conviction, (ii) prosecutorial misconduct during closing argument, (iii) the trial court's refusal to submit requested instructions, and (iv) the admission and exclusion of certain evidence. We affirm the trial court's judgment.

## FACTS

In 1986, appellant began working as a bookkeeper at Adele Hunt Furniture and Studio in Dallas, Texas. As bookkeeper, appellant was required to maintain company checking accounts, reconcile bank statements, handle payroll, post transactions on company computers, and generally maintain the company books. One of appellant's pri-

---

1. The Honorable Linda Thomas was on the original panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

mary responsibilities was to pay company expenses. Appellant shared signature authority on three company checking accounts with Richard Lewis, the company's president, and John Holman, the "semi-retired" owner of the company. All company accounts over which appellant had authority were dual-signature accounts, *i.e.*, they required two authorized signatures before checks could be cashed.

In late November 1990, Lewis learned that a company checking account was overdrawn. Lewis began investigating the problem and discovered that numerous company checks were not properly documented in the internal record-keeping system. He determined that many checks that appeared in the "manual log" and computer as either "voided" or written to company creditors, had in fact been used to pay appellant's personal American Express bills.[2] He also discovered numerous petty cash withdrawals bearing appellant's endorsement which had not received his prior approval. The testimony established that whenever a suspect petty cash withdrawal was made, a deposit of an almost identical amount appeared in appellant's personal account within a day or so. Lewis testified that most of the subject checks did not appear in the backup files with appropriate documentation.[3] Lewis fired appellant.

At trial, Lewis testified he had not authorized appellant to either (i) pay her personal bills with company checks, or (ii) advance herself money out of petty cash without prior approval.[4] The State offered into evidence many of the checks allegedly taken by appellant, appellant's personal American Express bills, and company account ledgers. Lewis testified that although all of the subject checks included his signature, he had not in fact authorized the checks to be used to pay appellant's bills. He explained that he had, on a number of occasions, signed blank company checks so appellant could carry on company business while he was out of the office. He emphasized, however, that he had not, by signing blank checks, authorized appellant to use company funds for anything other than business expenses. Lewis testified the total amount of unauthorized petty cash withdrawals and unauthorized American Express payments traceable to appellant was over $20,-000.[5] On cross-examination, Lewis admitted that he paid appellant overtime pay after she had been terminated from the company. The defense rested without offering any witnesses or presenting evidence.

## SUFFICIENCY OF THE EVIDENCE

The indictment charged appellant with knowingly and intentionally appropriating "checks representing current money of the United States of America." The indictment alleged the appropriation occurred "without the effective consent of Richard E. Lewis, in that there was no consent given." In the first point of error, appellant challenges the sufficiency of the evidence to show a lack of consent. In the second point of error, appellant contends the trial court erred in denying her directed-verdict motion because no evidence existed on the "lack of effective consent" issue. Finally, in the third point of error, appellant contends a fatal variance existed between the allegations in the indictment, which alleged theft by checks, and the proof offered at trial, which showed the checks were *given* to appellant with "no fraud or artifice of any kind." Appellant

---

2. An American Express employee confirmed this testimony, stating that Adele Hunt checks were often used to make payments on appellant's personal account.

3. According to Lewis, the company kept copies of each issued check and always attached either the bill it covered or, if no bill was issued, other proper documentation showing the purpose for the check. Lewis testified that no such documentation could be found for any of the subject checks.

4. Lewis testified that appellant's personal American Express card was never used to purchase items for the company; thus, the checks payable to her American Express account did not constitute some form of reimbursement.

5. Murry Reese, the State's investigator, testified that appellant paid $31,837.57 on her American Express bill with Adele Hunt checks.

argues, in essence, that the evidence is insufficient because Lewis had indeed consented to appellant's control over the checks.

### 1. Standard of Review

When an appellant challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). This standard leaves to the jury, as the trier of fact, the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991). Thus, the jury is free to accept or reject any or all of the evidence presented by either side. *Id.*

A challenge to a trial court's ruling on a motion for directed verdict is, in reality, a challenge to the sufficiency of the evidence. *See Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990); *Havard v. State,* 800 S.W.2d 195, 199 (Tex.Crim.App.1989). Thus, if the evidence is sufficient to sustain the conviction, the trial court does not err in overruling the defendant's motion. *See Madden,* 799 S.W.2d at 686. In making our determination, we review the entire body of evidence presented at trial. *See Havard,* 800 S.W.2d at 199.

### 2. Applicable Law

A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1994). Appropriation of property is unlawful if it is without the owner's effective consent. TEX.PE-NAL CODE ANN. § 31.03(b) (Vernon 1994). The Texas Penal Code defines "appropriate" to mean:

> (A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or
>
> (B) to acquire or otherwise exercise control over property other than real property.

TEX.PENAL CODE ANN. § 31.01(4) (Vernon 1994).

The prosecution is required to specify in the indictment the manner of appropriation it intends to prove at trial. *Gorman v. State,* 634 S.W.2d 681, 682 (Tex.Crim. App. [Panel Op.] 1982). When, as in this case, the indictment alleges an appropriation without consent of any kind, it necessarily alleges an appropriation under subsection (B). *Lewis v. State,* 659 S.W.2d 429, 432 (Tex.Crim.App.1983). In such a case, the State must prove the defendant acquired or otherwise exercised control over property without the owner's effective consent.

In cases alleging theft of property by an employee or fiduciary, theft may be established by showing the employee or fiduciary did not have authority to dispose of or appropriate the property in the manner alleged. Thus, theft is established by showing that the employee or fiduciary acted in some way inconsistent with his lawful authority. *Freeman v. State,* 707 S.W.2d 597, 605 (Tex. Crim.App.1986). When the employee or fiduciary decides, for whatever reason, to unlawfully and permanently deprive the lawful owner of the property, he is then acting in an unauthorized capacity and has committed theft. *Id.* The line between lawful and unlawful activity by an employee is a question of the scope of the employee's authority. *Id.* at 606.

### 3. Application of Law to Facts

As the company bookkeeper, appellant had a right to possess and, to a certain

extent, control the company's checks. However, once appellant decided to use the checks for her own benefit rather than for the benefit of the company, her control over the checks (and the funds they represented) could no longer be considered consensual. As noted previously, when an employee or fiduciary decides, for whatever reason, to unlawfully and permanently deprive the lawful owner of its property, the employee/fiduciary is then acting in an unauthorized capacity, *i.e.*, she is then exercising unauthorized control over the property and has committed the offense of theft. *See Freeman*, 707 S.W.2d at 605–06; *see generally Bailey v. State*, 885 S.W.2d 193 (Tex.App.—Dallas 1994, pet. filed).

We conclude appellant's intent to permanently deprive Lewis of the checks and the money they represented is affirmatively established in the record. Lewis testified to the elaborate scheme used by appellant to hide her actions. He testified that, rather than properly identifying the checks in the manual ledger and on the company's computer, appellant falsified this information. Additionally, appellant noted some checks as "voided" in the company records when in fact they had been cashed and used for appellant's own personal expenses. According to Lewis, appellant failed to properly file copies of checks with supporting documentation in the appropriate company files. Lewis testified that appellant was not authorized to pay her American Express bills with company checks, take money from petty cash without permission, or falsify company records so as to conceal her suspect activities.

We believe the "creative" bookkeeping procedures used by appellant manifest an intent on her part to permanently deprive Lewis of his property in this case. Because appellant manifested an intent to permanently deprive Lewis of company checks (and the funds they represented), we hold that appellant's exercise of control over the Adele Hunt checks was unauthorized. *See Freeman*, 707 S.W.2d at 605. Accordingly, we hold the evidence was sufficient to establish that appellant took the checks in question without

Lewis's effective consent. We further conclude that no fatal variance existed between the allegations in the indictment and the evidence offered at trial. We overrule the first and third points of error.

Because the evidence is sufficient to establish appellant's unlawful appropriation of the checks in question, we conclude the trial court did not err in overruling appellant's motion for directed verdict. *See Madden*, 799 S.W.2d at 686 (if evidence sufficient to sustain conviction then no error in denying directed verdict). Accordingly, we overrule appellant's second point of error.

## IMPROPER JURY ARGUMENT

In the fourth point of error, appellant contends the trial court erred in not granting a mistrial after the prosecutor made an improper comment during closing argument. Appellant contends the remark was so prejudicial and manifestly improper that it could not be cured by the court's instruction to disregard.

### 1. Complained-of-Argument

During the rebuttal portion of the prosecutor's argument at guilt/innocence, the prosecutor stated:

> We have to prove our case beyond a reasonable doubt that this defendant committed this crime on or about the dates alleged and that State's Exhibit Nos. 1 through 65 show. And that's exactly what we've proven and that she had no consent, not from anyone, and she knew she had no consent. *And how she can sit there with a straight face and not feel guilty about what she's done is beyond me.*

At trial, defense counsel objected that the highlighted statement was an improper comment on appellant's "very appropriate" courtroom demeanor. The trial court agreed and sustained the objection. The court then instructed the jury to disregard the statement, but denied appellant's motion for mistrial.

### 2. Applicable Law

To be proper, jury argument must fall into one of the following categories: (i)

summation of the evidence; (ii) reasonable deduction from the evidence; (iii) response to argument of opposing counsel; or (iv) plea for law enforcement. *See Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Jones v. State,* 843 S.W.2d 92, 100 (Tex.App.—Dallas 1992, pet. ref'd). However, even if an argument is outside one of these areas, it may not necessarily require reversal. An instruction to disregard the remarks will normally cure the error, unless "in light of the record as a whole [the argument] was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused," in which case, the error is reversible. *Cooks,* 844 S.W.2d at 727.

### 3. Application of Law to Facts

Immediately following the prosecutor's comment on appellant's courtroom demeanor, the trial judge instructed the jury to disregard the comment. Appellant has not shown that, in light of the record as a whole, the comment was extreme or manifestly improper. Nor has she shown that the comment violated a mandatory statute or injected any new or harmful facts into evidence. Accordingly, we conclude the trial court's instruction cured any error in the prosecutor's comment and no reversal is required. *See Willis v. State,* 785 S.W.2d 378, 385 (Tex.Crim.App. 1989) (concluding that prosecutor's comment that defendant sat through trial with "deadpan, insensitive, and expressionless face" was not so manifestly improper, harmful, or unjust as to warrant reversal), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). We overrule the fourth point of error.

### REQUESTED INSTRUCTIONS

In the fifth and sixth points of error, appellant contends the trial court erred in refusing to submit two of her requested instructions to the jury. First, she maintains the trial court should have instructed the jury on her "claim of right" defense. Second, she contends the court should have instructed the jury that the term "appropriate" means to "acquire *and* exercise" control over property, rather than "acquire *or* exercise" control.

### 1. Applicable Law

Prior to submitting its charge to the jury, the trial court must give defense counsel a reasonable time to examine the proposed charge and present any objections thereto in writing. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1995). Defense counsel's objections may consist of either (i) errors claimed to have been committed in the charge, or (ii) errors occurring as a result of an omission from the charge. *Id.* When an error has been committed in the court's charge and the error was the subject of a timely objection, reversal is required if the error was calculated to injure the rights of the defendant. *See* TEX.CODE CRIM.PROC. ANN. art. 36.19 (Vernon 1981); *see also Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984).

A trial court must, when properly requested, instruct the jury on every defensive theory raised by the evidence. *See Smith v. State,* 676 S.W.2d 584, 586 (Tex. Crim.App.1984). This is true whether the evidence is strong, feeble, unimpeached, or contradicted. *See Smith,* 676 S.W.2d at 586–87; *see also Reed v. State,* 703 S.W.2d 380, 382 (Tex.App.—Dallas 1986, pet. ref'd) (per curiam). A defendant's requested charge is properly denied, however, when it merely negates an element of the offense. *See Weaver v. State,* 722 S.W.2d 143, 148 (Tex. App.—Houston [1st Dist.] 1986, no pet.). When a statute alleges two different manner and means of committing an offense, the State may allege the manner and means conjunctively in the indictment and disjunctively in the charge to the jury. *See Davis v. State,* 687 S.W.2d 78, 81 (Tex.App.—Dallas 1985, pet. ref'd); *Daniels v. State,* 652

S.W.2d 614, 615 (Tex.App.—Dallas 1983, no pet.).

## 2. Application of Law to Facts—"Claim of Right" Defense

■ Appellant requested the trial court to give the following instruction to the jury:

> You are further instructed that if defendant appropriated the checks in issue under a claim of right, or if you have a reasonable doubt thereof, you are to return a verdict of not guilty.

The requested instruction was based on suggestions by defense counsel at trial that appellant may have had a lawful claim on the funds taken; *i.e.*, as compensation or bonus money. The trial court refused to give the requested instruction.

To convict appellant in this case the jury was required to find beyond a reasonable doubt that appellant "unlawfully, ... knowingly and intentionally, appropriate[d] ... checks representing current money of the United States ... without the effective consent of [the] *owner* [*i.e.*, Richard Lewis]." (emphasis added). The Texas Penal Code defines "owner" as one having title, possession, or a greater right to possession of the property than the actor. *See* TEX.PENAL CODE ANN. § 1.07(a)(35) (Vernon 1994); *see also Harrell v. State*, 834 S.W.2d 540, 542 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

Appellant's requested charge instructing the jury to acquit if it found appellant appropriated the checks under a "claim of right" does nothing more than negate the ownership element of the charged offense. In other words, it takes issue with whether Richard Lewis, rather than appellant, was the lawful owner of the subject checks and the funds they represented. At the very least, it suggests that appellant and Lewis had an equal right to possession of the subject funds. Because appellant's requested instruction merely negates one of the elements of the offense charged, appellant was not entitled to have the instruction included in the charge. *See Weaver*, 722 S.W.2d at 148. The trial court properly denied appellant's request. We overrule the fifth point of error.

## 3. Application of Law to Facts—Definition of "Appropriate"

■ The trial court submitted a proposed charge to the lawyers that defined "appropriate" to mean "acquire *or* otherwise exercise control over property, other than real property." (emphasis added). Appellant objected to the definition, asking the court to change the sentence to read: " 'Appropriate' means to acquire *and* exercise control over property, other than real property." (emphasis added). The trial court refused appellant's request.

On appeal, appellant claims her requested modification was necessary to make the charge conform to the State's indictment.[6] Appellant further contends the conjunctive form was necessary to "associate the obtaining of the checks with the dominion over them." We disagree. It is well-settled that the State may allege the manner and means of committing theft conjunctively in the indictment and submit them disjunctively in the charge to the jury. *See Davis*, 687 S.W.2d at 81; *Daniels*, 652 S.W.2d at 615. The trial court did not err in refusing appellant's requested modification of the proposed charge. We overrule the sixth point of error.

## EXCLUSION OF EVIDENCE

In the seventh point of error, appellant complains of the exclusion of certain evidence. Appellant contends the trial court erred by refusing to allow cross-examination of Lewis regarding statements he allegedly made to Adele Hunt employees attributing the company's financial problems to appellant. Appellant maintains the court should

6. The indictment charged that appellant "did unlawfully ... knowingly and intentionally, appropriate, to wit: acquire *and* exercise control over property, other than real property...." (emphasis added).

have given her "great latitude" to show facts tending to establish Lewis's "ill feeling" and "bias" against her. *See Evans v. State,* 519 S.W.2d 868, 871 (Tex.Crim.App.1975).

### 1. Applicable Law

To be admissible, evidence must be relevant to a contested issue. *See Johnson v. State,* 698 S.W.2d 154, 160 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger that it will cause unfair prejudice or confuse or mislead the jury. TEX. R.CRIM.EVID. 403. The determination of whether to admit evidence over a timely objection of unfair prejudice is a matter which falls within the sound discretion of the trial court. *Perez v. State,* 830 S.W.2d 684, 687 (Tex.App.—Corpus Christi 1992, no pet.). The trial court's decision will not be disturbed absent a clear abuse of discretion. *Massey v. State,* 826 S.W.2d 655, 659 (Tex. App.—Waco 1992, no pet.).

### 2. Application of Law to Facts

During a bill of exception, appellant cross-examined Lewis regarding various statements he allegedly made to Adele Hunt employees after appellant was fired. Defense counsel asked Lewis whether he told his employees that the company's financial problems were a direct result of appellant's conduct during her employment with Adele Hunt. Lewis conceded he had told employees that "part of the problem ... [they] were experiencing" was caused by appellant's conduct. At the end of the bill, appellant argued Lewis's testimony should be admitted to show not only his bias, but also his tendency to use appellant as a "scapegoat." The prosecutor objected to the evidence, noting that it was so far removed from the issues of the

case that it would only confuse the jurors. The trial court agreed and excluded the evidence.

We conclude that no reversible error has been established. Appellant complains solely of the exclusion of testimony relating to Lewis's statements to employees placing the blame for company business losses on appellant. Even if we assume it was error to exclude this evidence, we nevertheless conclude no harm resulted from the trial court's ruling. *See* TEX.R.APP.P. 81(b)(2). During cross-examination of Lewis in front of the jury, defense counsel asked whether Lewis intended, when making his statements to Adele Hunt employees, to suggest that appellant was responsible for the financial problems existing at the company. Lewis responded that he "may have [made] some comments like that." No objection was made by the prosecutor to this line of questioning.[7] Thus, it appears that some evidence regarding Lewis's statements was before the jury. Because evidence was introduced to the effect that Lewis blamed appellant for the company's financial problems, we conclude appellant could not have been harmed by the exclusion of the proffered evidence in this case. Accordingly, no reversal is required. We overrule the seventh point of error.

## INTRODUCTION OF DOCUMENTARY EVIDENCE

In the eighth through fifteenth points of error, appellant complains about the admission of certain documentary evidence introduced by the State. Specifically, appellant contends the evidence should have been excluded because it (i) constituted inadmissible hearsay; and (ii) deprived her of the right to confront the witnesses against her, as guaranteed by the Sixth Amendment to the United States Constitution and article one, section ten of the Texas Constitution.[8]

### 1. Applicable Law

Hearsay is a statement, other than one made by the declarant while testifying at

---

7. Appellant did not attempt to elicit any more information on the subject.

8. We conclude appellant has waived her argument based on the state constitutional provision because of a lack of proper briefing. Although

appellant suggests the state constitutional provision provides broader protections to an accused than does its federal counterpart, the analysis in her brief relies exclusively on the court of criminal appeals' opinion in *Porter v. State,* 578

trial, that is offered to prove the truth of the matter asserted. *See* TEX.R.CRIM.EVID. 801(d); *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd). Although Texas Rule of Criminal Evidence 802 makes hearsay statements inadmissible at trial, *see* TEX.R.CRIM.EVID. 802, rule 803 outlines a number of exceptions. Rule 803(6), commonly known as the "business records exception," allows the admission of memoranda, reports, records, or data compilations that are made at or near the time of the events they record and are made:

> ... by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation....

TEX.R.CRIM.EVID. 803(6). The necessary predicate for introduction of a "business record" may be shown either by offering (i) the testimony of a records custodian or other qualified witness, or (ii) an affidavit that complies with rule 902(10). TEX.R.CRIM.EVID. 803(6). "Business records" are not admissible if the source of the information contained in the records, or the method or circumstances of their preparation, indicate a lack of trustworthiness. *Id.*

■ Rule 803(6) does not require a witness laying the predicate for introduction of a business record to be the creator of the document or even an employee of the company keeping the subject record. *See Montoya v. State*, 832 S.W.2d 138, 141 (Tex.App.— Fort Worth 1992, no pet.); *Apple v. State*, 744 S.W.2d 256, 257 (Tex.App.—Texarkana 1987, no pet.). A qualified witness need not have personal knowledge of the record's contents; he need only have personal knowledge of the mode of preparing the record. *See Montoya*, 832 S.W.2d at 141; *Mitchell v. State*, 750 S.W.2d 378, 379 (Tex.App.—Fort Worth 1988, pet. ref'd).

■ The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. CONST., amend. VI. This right is made applicable to the states by the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965). Although the constitutional provision guarantees criminal defendants the right to confront and cross-examine witnesses, this right is not absolute. *See Porter*, 578 S.W.2d at 745. Confrontation and cross-examination are not essential where the evidence bears the indicia of reliability sufficient to ensure the integrity of the fact-finding process. *Id.*

In *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the United States Supreme Court set out a two-part test to be used in resolving Confrontation Clause challenges. Under that test, the

---

S.W.2d 742 (Tex.Crim.App.1979). The *Porter* opinion addresses only the Sixth Amendment; it does not deal with the state constitutional provision. Thus, it cannot be used to show that the state constitution provides greater protections than the federal constitution. Because appellant has not provided us with any real explanation or analysis on how the constitutional provisions differ, we conclude she has not preserved her state constitutional claim. *See Muniz v. State*, 851 S.W.2d 238, 251 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993) (appellate court need not address state constitutional claims where appellant fails to provide separate substantive analysis under state constitution). Nevertheless, we note, as did the court in *Long v. State*, 742 S.W.2d 302, 313 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), *overruled on other grounds, Briggs v. State*, 789 S.W.2d 918

(Tex.Crim.App.1990), that "the interpretation given to Art. I, § 10 of the Texas Constitution closely parallels the evolution of the Sixth Amendment as interpreted by the United States Supreme Court." *Long*, 742 S.W.2d at 313; *see also Murdock v. State*, 840 S.W.2d 558, 564 (Tex. App.—Texarkana 1992) (finding no reason to apply article I, section 10 more broadly than federal counterpart in context of recorded statements of co-conspirators), *vacated,* 845 S.W.2d 915 (Tex.Crim.App.1993), *reinstated in part,* 856 S.W.2d 262 (Tex.App.—Texarkana 1993, pet. ref'd); *Loven v. State*, 831 S.W.2d 387, 393 n. 4 (Tex.App.–Amarillo 1992, no pet.) (applying same legal analysis under both state and federal Confrontation Clauses for case dealing with learned treatise exception).

proponent of an out-of-court statement must show that (i) the person making the out-of-court statement is unavailable,[9] and (ii) the statement bears adequate "indicia of reliability." *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. Reliability may be inferred without more in a case where the statement falls within a "firmly rooted hearsay exception." In other cases, the proponent of the statement must show the statement has "particularized guarantees of trustworthiness." *Id.*

▪▪▪ Admission under a firmly rooted hearsay exception satisfies the constitutional requirement because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements. *See Idaho v. Wright*, 497 U.S. 805, 815–17, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990). Nevertheless, the court of criminal appeals has recognized that even if a statement would otherwise fall within the ambit of a well-recognized hearsay exception, it may still offend the constitutional rights of confrontation and cross-examination if it does not have sufficient indicia of reliability. *Porter*, 578 S.W.2d at 746. A court faced with such a statement must determine whether the statement is of such trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation and cross-examination. *Id.* The particular statement and its relationship to the particular case in which it is offered are a part of the circumstances to be considered in determining whether the statement has the indispensable fundamental trustworthiness necessary for admission into evidence. *Id.*

### 2. Application of Law to Facts—Hearsay Objection

▪▪▪ At trial, the State offered into evidence various bank statements and microfiche copies of checks and deposit slips from appellant's checking account at Southwest Savings. The evidence, identified as State's Exhibits S–1 through S–38, was offered through Debbie Gray, branch manager for Southwest Savings. At trial, appellant objected that the evidence was inadmissible hearsay. The trial court overruled appellant's objection and admitted the evidence. In the eighth point of error, appellant contends this ruling was error. In the eleventh point of error, appellant makes a similar argument regarding the American Express bills offered into evidence as State's Exhibit A–1. We find appellant's argument on both points to be without merit.

▪▪ Ms. Gray identified State's Exhibits S–1 through S–38 as records of a Southwest Savings checking account and microfiche copies of checks and deposit slips associated with that account. Peter Ryan, the assistant custodian of records and account services supervisor for American Express, identified State's Exhibit A–1 as copies of American Express card statements for two particular accounts. Both witnesses testified they were familiar with the daily record-keeping procedures at their respective companies (*i.e.*, procedures for preparing bank statements and American Express card statements) and that the records included in the subject exhibits (i) were kept in the course of the companies' regularly conducted business activities, and (ii) it was the regular practice of the companies to make the records. They further testified that the records were made (i) at or near the time of the events they recorded; and (ii) by, or from information transmitted by, a person with knowledge of the underlying events. This is all that is required under rule 803(6) for the admission of business records.[10] Because the testimony of Ms. Gray and Mr. Ryan established the necessary predicate for admitting the deposit slips, checks, bank records, and American Express card statements into evidence, we conclude

---

9. As will be more fully discussed later, the unavailability rule has since been significantly modified by the Supreme Court.

10. Appellant points out that some of the subject records were generated by a computer. We note

that rule 803(6) does not require any additional predicate to be laid for the admission of computer-generated records. *See Hinkle v. State*, 779 S.W.2d 504, 508 (Tex.App.—Beaumont 1989, pet. ref'd).

the trial court acted properly in admitting State's Exhibits A–1 and S–1 through S–38 under rule 803(6).[11] We overrule the eighth and eleventh points of error.

### 3. Application of Law to Facts—Confrontation Clause Challenge

At trial, appellant raised an additional objection to the documents referenced above; namely, that their introduction violated appellant's right to confront and cross-examine witnesses under the state and federal constitutions. Appellant made an identical argument when the State sought to introduce copies of petty cash checks allegedly stolen by appellant. The trial court overruled appellant's objections. In the ninth, twelfth, and fourteenth points of error, appellant contends the trial court erred in overruling her Confrontation Clause objection to the admission of appellant's bank records (State's Exhibits S–1 through S–38), appellant's American Express bills (State's Exhibit A–1), and copies of various Adele Hunt petty cash checks (State's Exhibits C–1 through C–6).[12]

**Unavailability:** We begin our analysis of appellant's Confrontation Clause challenge by looking to the Supreme Court's two-part test announced in *Roberts*. The first prong of the test establishes a rule of "necessity," requiring a party to either (i) produce the out-of-court declarant, or (ii) show the declarant was unavailable to testify at trial. *Roberts*, 448 U.S. at 65, 100 S.Ct. at 2538–39. However, since the decision in *Roberts*, the Supreme Court has taken steps to limit the unavailability rule it previously announced. In *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Court reversed a ruling by the Third Circuit which interpreted *Roberts* to require a showing of

unavailability in every case involving the introduction of an out-of-court statement. The Court noted, in reaching its decision, that "*Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable." *Inadi*, 475 U.S. at 394, 106 S.Ct. at 1125. The Court emphasized that *Roberts* must be read consistently with the question it answered, *i.e.*, whether a showing of unavailability is required for admission of testimony given during a *prior judicial proceeding*. The Court concluded that *Roberts* did not impose a general unavailability rule. *Id.*

In *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the Court again reiterated that *Roberts* stood only for the proposition that unavailability is required when the challenged out-of-court statement was made during the course of a *prior judicial proceeding*. The Court again refused to extend the unavailability requirement to all out-of-court statements, noting it had previously rejected such a proposition in *Inadi*. The Court reasoned that a showing of unavailability was inappropriate in cases involving spontaneous declarations and statements made for purposes of medical diagnosis because, unlike former in-court testimony, such statements have their own evidentiary significance and are made in contexts that provide substantial guarantees of trustworthiness. *White*, 502 U.S. at 354–56, 112 S.Ct. at 742. The Court concluded that excluding such statements because of a failure to show a declarant's unavailability would be the "height of wrong-headedness." *Id.* at 356, 112 S.Ct. at 743. The Court acknowledged that, as a general rule, statements which qualify for admission under a "firmly rooted"

11. Although appellant complains that many of the subject records reflect entries that were not made by persons employed by the company whose records were being offered, this fact is not relevant to admissibility. Rule 803(6) does not require a witness laying the predicate for introduction of a business record to be an employee of the company keeping the subject record. *See Apple*, 744 S.W.2d at 257. Likewise, it does not require the person making the entries on a par-

ticular record to be an employee of the company. *Id.*

12. As noted previously, appellant has not preserved her complaint based on article one, section ten of the state constitution. Because points of error ten, thirteen, and fifteen all focus exclusively on the state constitutional provision, we need not address those points.

hearsay exception are so trustworthy that adversarial testing can be expected to add little to their reliability. *Id.*

■ Like the Court in *White,* we conclude that statements introduced under the business records exception not only have their own evidentiary value, but are also exceedingly trustworthy.[13] Obviously, individuals making records in the course of a regularly conducted business have an interest in keeping those records accurate. Because such records are necessary for a company to operate efficiently and effectively, we conclude the records "are made in contexts that provide substantial guarantees of trustworthiness." Thus, like the Court in *White,* we conclude a party need not show the declarant's unavailability prior to having such records introduced and admitted at trial. The failure to show unavailability does not, in our view, violate the central tenets of the Sixth Amendment's Confrontation Clause. *See Manocchio v. Moran,* 919 F.2d 770, 774–76 (1st Cir.1990) (showing of unavailability not required for business records to satisfy Confrontation Clause), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991);

*Hayden v. State,* 753 S.W.2d 461, 463 (Tex. App.—Beaumont 1988, no pet.) (concluding unavailability not required under rule 803(6) and finding no violation of state or federal Confrontation Clauses).[14]

■ **Indicia of Reliability:** Having dispensed with the first prong of the *Roberts* test, we turn now to a consideration of the second prong, *i.e.,* whether the subject records contained sufficient indicia of reliability for admission into evidence. We conclude that they did.

As noted previously, the documents introduced as State's Exhibits A–1 and S–1 through S–38 constituted business records and, thus, were properly introduced under rule 803(6). Likewise, the petty cash withdrawal checks introduced as State's Exhibits C–1 through C–6 constitute business records. The State offered those exhibits through the affidavit of William Mathis, the records custodian from Cullen/Frost Bank, N.A. (the bank where the petty cash account was kept). This affidavit meets the requirements of rule 902(10).[15] Thus, it adequately laid the predicate for admitting State's Exhibits C–1 through C–6 under the business records ex-

**13.** The court of criminal appeals has emphasized that the purpose of the business records exception is to dispense with the necessity of proving each and every book entry by the person actually making such entry. *Coulter v. State,* 494 S.W.2d 876, 884 (Tex.Crim.App.1973) (construing Business Records Act—predecessor to business records exception). The theory underlying the exception is that there is a certain probability of trustworthiness of records regularly kept by an organization while engaged in its activities and upon which it relies in the ordinary course of its activities. *Id.*

**14.** We note, however, that at least with respect to State's Exhibits A–1 and S–1 through S–38, appellant had the opportunity to confront and cross-examine the witnesses sponsoring the exhibits. Although these individuals were not necessarily the ones recording the information in the records, appellant nevertheless did have an opportunity to cross-examine these witnesses about the method of preparing the subject records. *See United States v. Peden,* 556 F.2d 278, 281 (5th Cir.) (concluding that admission of business records did not offend defendant's confrontation rights because, although defendant was not able

to cross-examine person making records, defendant had opportunity to cross-examine records custodian), *cert. denied,* 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150 (1977); *see also United States v. Colyer,* 571 F.2d 941, 947 (5th Cir.) (no abuse of discretion in admitting Master Charge tickets where records custodian testified about how records were handled by bank), *cert. denied,* 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978).

**15.** Rule 902(10) provides, in pertinent part, that:

[a]ny record or set of records or photographically reproduced copies of such records, which would be admissible under Rule 803(6) ... shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) ..., that such records attached to such affidavit were in fact so kept as required by Rule 803(6)....

Tex.R.Crim.Evid. 902(10). The rule provides a form affidavit which complies with the rule. *See* Tex.R.Crim.Evid. 902(10)(b). The affidavit in this case mirrors that form affidavit.

ception.[16]

The Court in *Roberts* recognized that the "indicia of reliability" requirement can be satisfied by showing that the subject statements fall within a "firmly rooted hearsay exception." The business records exception to the hearsay rule is just such a "firmly rooted" exception. *See Roberts,* 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8; *see also Loven,* 831 S.W.2d at 396. Because the subject exhibits all constitute business records, we conclude the statements contained in the exhibits fall within a "firmly rooted" hearsay exception. Additionally, we conclude the records were sufficiently trustworthy so as not to run afoul of the constitutional rights of confrontation and cross-examination. The subject records are purely factual in nature (*i.e.,* they document actual financial transactions rather than stating mere opinions) and were made by entities with an interest in keeping the records accurate. Moreover, at least with respect to the first two groups of documents, a custodian was present at trial for appellant to cross-examine. *See Porter,* 578 S.W.2d at 746 (recognizing that even if records come within firmly rooted hearsay exception, court must still determine whether records have "indispensable fundamental trustworthiness necessary for [their] admission into evidence"); *see also Peden,* 556 F.2d at 281. Based on these facts, we conclude the State met its burden of showing the subject records bore sufficient "indicia of reliability." Accordingly, we conclude the trial court did not err in overruling appellant's Confrontation Clause objections. We overrule the ninth, twelfth, and fourteenth points of error.

We affirm the trial court's judgment.

---

**16.** We note that while appellant raised a hearsay objection to the first two categories of documents (State's Exhibits A–1 and S–1 through S–38), she made no such objection to the petty cash withdrawal checks offered as State's Exhibits C–1 through C–6.