**Affirmed and Opinion Filed December 14, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01402-CR

**FANCHON ELISE WIMBISH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 063716**

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Lang

Franchon Elise Wimbish appeals the trial court's judgment convicting her of assault against a public servant enhanced by a prior conviction. Wimbish pleaded guilty to the offense and true to the enhancement paragraph. After finding Wimbish guilty, the jury found the enhancement true and assessed her punishment at eight years of imprisonment.

In one issue on appeal, Wimbish argues the trial court erred when it denied her objections to the admission of the business records of the Grayson County Sheriff's Office, containing the inmate incident reports documenting her conduct because: (1) the records contained inadmissible hearsay and are not subject to the business records exception; and (2) the admission of the records violated her rights under the Confrontation Clause of the Sixth Amendment. We conclude the trial court did not err when it denied her hearsay objection. Also, assuming,

without deciding, the trial court erred, we conclude Wimbish was not harmed by any constitutional error resulting from the violation of her rights under the Confrontation Clause. The trial court's judgment is affirmed.

## I.  PROCEDURAL BACKGROUND

Wimbish was indicted for one offense of assault against a public servant and two offenses of aggravated assault with a deadly weapon, all enhanced by a prior conviction.  Before trial, Wimbish pleaded guilty to the offense of assault against a public servant and the State abandoned one of the counts alleging aggravated assault with a deadly weapon.  After the trial, the jury found Wimbish guilty of assault against a public servant and acquitted her of the remaining count for aggravated assault with a deadly weapon.  Wimbish pleaded true to the enhancement paragraph and, after a hearing a punishment, the jury assessed her punishment at eight years of imprisonment.

## II.  ADMISSION OF JAIL RECORDS

In one issue, Wimbish argues the trial court erred when it denied her objections to the admission of the business records of the Grayson County Sheriff's Office, containing the inmate incident reports because: (1) the records contained inadmissible hearsay and are not subject to the business records exception; and (2) the admission of the records violated her rights under the Confrontation Clause of the Sixth Amendment.

### A.  *Business Records Exception to the Hearsay Rule*

In the first part of issue one, Wimbish argues that the inmate incident reports do not fall under the business records exception because they were made by law enforcement for the purpose of investigating a crime.  The State responds that the inmate incident reports in this case fall within a recognized exception to the hearsay rule.

### 1. Applicable Law

The business records exception is a firmly-rooted hearsay exception. *See Huff v. State*, 897 S.W.2d 829, 843 (Tex. App.—Dallas 1995, pet. ref'd). The business records exception provides that "a record of an act, event, condition, opinion, or diagnosis . . . made at or near the time by—or from information transmitted by—someone with knowledge," is not excluded by the hearsay rule if "kept in the course of a regularly conducted business activity . . . [and] making the record was a regular practice of that [business] activity." TEX. R. EVID. 803(6). Jail records introduced during the punishment phase of trial, chronicling the defendant's violation of jail rules, cell transfers, and fighting, is not inadmissible hearsay; rather they qualify as records made in the regular course of business. *Jackson v. State*, 822 S.W.2d 18, 30–31 (Tex. Crim. App. 1990); *Ford v. State*, 179 S.W.3d 203, 209 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

### 2. Application of the Law to the Facts

The inmate incident reports of the Grayson County Sheriff's Office were introduced as business records during the punishment phase of Wimbish's trial. During the hearing on punishment, Kimberly Hobbs, the ID Officer at the Grayson County Jail, testified she was responsible for the jail records, which generally include the arrest report, inmate information sheet, warrants, magistrate lists, inmate issue forms, and "things of that nature." Hobbs stated that "everything relating to a particular inmate" are included in the inmate's file, kept in the regular course of business, and made at or near the time of the activity by a person with knowledge. The inmate incident reports made since Wimbish's most recent incarceration were offered into evidence as business records. Wimbish objected, in part, on the basis that they were hearsay and the trial court overruled the objection. We conclude the inmate incident reports, introduced during the punishment phase of the trial, documenting Wimbish's violation of jail rules, suicide attempts, cell transfers, and fighting qualify as records made in the regular course

–3–

of business and are not hearsay. *See Jackson*, 822 S.W.2d at 30–31; *Ford*, 179 S.W.3d at 209. The first part of issue one is decided against Wimbish.

### B. Right to Confront Adverse Witnesses

In the second part of issue one, Wimbish argues the trial court erred when it overruled her Confrontation Clause objection to the admission of the inmate incident reports. In her brief on appeal, Wimbish does not argue she was harmed by this error. The State concedes the trial court erred in allowing the inmate incident reports to be admitted over Wimbish's Confrontation Clause objection. However, the State maintains Wimbish was not harmed by the error because: (1) the inmate incident reports actually supported her request for mitigation due to her mental illness as evidenced by her attempts to commit suicide while in jail; and (2) additional punishment evidence detailed her failure to comply with community supervision requirements, self-cutting, and drug use. Accordingly, assuming, without deciding the trial court erred, we consider whether any such argument was harmful.

### 1. Constitutional Error Harm Analysis

Pursuant to rule 44.2(a), "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse [the assessment of] punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the . . . punishment." TEX. R. APP. P. 44.2(a). Any Confrontation Clause error is of constitutional dimension and subject to a constitutional harm analysis. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

When conducting a rule 44.2(a) harm analysis, the primary question is whether there is a reasonable possibility or likelihood the constitutional error might have contributed to the conviction. *Rubio v. State*, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). This requires an appellate court to

assess the likelihood the error was a contributing factor in the jury's deliberations and decision. *Langham*, 305 S.W.3d at 582; *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). An appellate court does not focus on the propriety of the jury's verdict. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. Nor does an appellate court's analysis turn on whether the jury's verdict was supported by the evidence. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. Instead, the question is whether the alleged constitutional error adversely affected the integrity of the process leading to the conviction. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. Thus, evidence admitted in violation of the Confrontation Clause does not require reversal unless there is a reasonable possibility that, within the context of the entire trial, the perceived error "moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690.

When determining whether constitutional error under the Confrontation Clause may be declared harmless, the following factors are relevant: (1) how important was the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. In addition to the factors listed above, an appellate court may consider: (1) the source and nature of the error; (2) to what extent, if any, it was emphasized by the State; and (3) how much weight the jury may have assigned to the erroneously admitted evidence compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not

contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting TEX. R. APP. P. 44.2(a)).

### 2. Application of the Law to the Facts

First, we review how important the inmate incident reports of the Grayson County Sheriff's Office were to the State's case. Wimbish pleaded guilty to the offense and true to the enhancement paragraph, and the jury found Wimbish guilty and the enhancement paragraph true. Also, in addition to the introduction of the inmate incident reports, Jason Kirk, the deputy chief of the Grayson County Adult Probation Department, testified during the hearing on punishment. Kirk was the court officer that initially instructed Wimbish on the terms and condition of her deferred adjudication community supervision for the offense of possession of cocaine in an amount of four grams or more, but less than 200 grams. Kirk also attended the hearing on the State's motion to revoke Wimbish's community supervision for that offense and to adjudicate her guilty. According to Kirk, the State's motion alleged that Wimbish had been discharged from a treatment facility for self-cutting, tested positive for drugs on several occasions, failed to appear for evaluations as scheduled, failed to perform community service, "failed to do classes," failed to pay fees, and had been rearrested for misdemeanor possession of marijuana. Wimbish's community supervision was revoked, and she was adjudicated guilty and sentenced to seven years of imprisonment. In addition, the judgment adjudicating Wimbish's guilt was admitted into evidence.

Second, we review the second and third factors, i.e., whether the inmate incident reports were cumulative of other evidence and look for the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points. The inmate incident reports showed Wimbish's violent nature, inability to follow rules, and suicidal tendencies. However, other evidence also established those characteristics of Wimbish. During the hearing

on punishment, Kirk testified to Wimbish's inability to follow rules, stating she failed to appear for evaluations as scheduled, failed to perform community service, and "failed to do classes" while on community supervision for a prior offense. Also, Wimbish's sisters testified to her violent nature. Shanise Wimbish testified Wimbish has "anger issues" and assaulted their older sister, Tara. In addition, Tara Wimbish testified that, during a fight between the two, Wimbish kicked the door in to her house, hit her head with an "iron" three or four times, resulting in bleeding and open wounds, and bit her daughter's calf until she put her fingers in Wimbish's nose to pull Wimbish off. Finally, Wimbish introduced evidence that she suffered from a mental illness and that her family had a history of mental illness.

Third, we review the fourth factor, i.e., the overall strength of the State's case. Wimbish pleaded guilty to the offense of assault against a public servant, but the jury acquitted her of the offense of aggravated assault with a deadly weapon. Also, Wimbish pleaded true to the enhancement paragraph.

Fourth, we review an additional factor as to source and nature of the error. There were fifty-three inmate incident reports, documenting approximately twenty-eight different incidents. Approximately twenty-two of those incidents were classified as minor infractions and six were classified as major infractions.[1] Each report lists the violation type. The following violation types appear in the inmate incident reports: medical report; information report; disruption of any institutional activity; fighting; refusal to follow written or oral directives; impeding the security of housing units; entering or exiting an area without permission; violation of visitation procedures; and recklessness. Also, each report includes a narrative describing the incident.

---

[1] For those incidents with multiple reports, we note that there is some inconsistency among the reports as to the classification of the incident as a major or minor infraction.

Further, the inmate incident reports include reports of two hearings on Wimbish's conduct that resulted in her loss of jail privileges for a specified period of time.

Fifth, we review to what extent, if any, the inmate incident reports were emphasized by the State. During the hearing on punishment, the State introduced the inmate incident reports through the records custodian. After proving up the admissibility of the records and obtaining admission of them into evidence, the State only solicited testimony from the witness generally describing the number and categories of incidents. In closing, the State focused its argument on Wimbish's violent nature, mental health, and need for medication, stressing that the only way to ensure she takes her medication is if she is imprisoned. The State only mentioned the incident reports as follows:

> You have heard about the manipulation, whatever it takes to get into segregation, the fights, the pseudo cutting on herself, trying to commit suicide with toilet paper. Read the MHMR and TMC records. They say in the[y']re artificial or superficial lacerations, attempts, anything to get attention. . . .

> [T]he only time she has taken her medicine is when she was in prison. The only time it was guaranteed that she took her medicine was when the people, the guards at the Texas Department of Corrections guaranteed it. That was when she was safe from herself. That was when the citizens of Grayson County were safe.

> You don't hear about the good things [the officers] do. How they car[ed] for her, how they did everything possible to make sure she did not hurt herself.

In contrast, in *Russeau* "most of the written reports detailing the appellant's alleged disciplinary offenses were read aloud to the jury at the punishment phase and [] the prosecutor referred to the reports numerous times during his closing argument at that phase." *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005).

Finally, we review how much weight the jury may have assigned to the erroneously admitted inmate incident reports compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. Wimbish pleaded guilty to the offense and true to the enhancement. In the trial court's charge on punishment, it instructed the jury that if

–8–

they found the enhancement paragraph true, they should assess Wimbish's punishment at not more than twenty years or less than two years of imprisonment, plus a fine not to exceed $10,000. Although the State argued that Wimbish should be sentenced to twenty years of imprisonment, the maximum sentence allowed, the jury assessed Wimbish's punishment at eight years of imprisonment.

We conclude the record does not show a reasonable likelihood that the admission of the inmate incident reports contributed to Wimbish's punishment. Accordingly, we conclude that, assuming, without deciding the trial court erred, Wimbish was not harmed by any constitutional error resulting from the violation of her rights under the Confrontation Clause. The second part of issue one is decided against Wimbish.

## IV. CONCLUSION

The trial court did not err when it denied her hearsay objection. Also, assuming, without deciding, the trial court erred, Wimbish was not harmed by any constitutional error resulting from the violation of her rights under the Confrontation Clause.

The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
141402F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

FANCHON ELISE WIMBISH, Appellant

No. 05-14-01402-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 063716.
Opinion delivered by Justice Lang. Justices Evans and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 14th day of December, 2015.