In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-01-00216-CR
______________________________


TOMMY PENNON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 00-F-0189-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Tommy Pennon was convicted by a jury of aggravated sexual assault of his
girlfriend's daughter in violation of Tex. Pen. Code Ann. § 22.021.


 Pennon pled true to the
enhancement paragraph of the indictment, and the jury assessed punishment at life
imprisonment. In Pennon v. State, No. 06-00-00227 (Tex. App.‒Texarkana Nov. 29, 2000,
no pet.) (not designated for publication), this Court dismissed Pennon's appeal for lack of
jurisdiction because notice of appeal was not timely filed. On application for writ of habeas
corpus, Pennon was granted an out-of-time appeal by the Texas Court of Criminal
Appeals. Ex parte Pennon, No. 74,194 (Tex. Crim. App. Oct. 10, 2001) (not designated
for publication). 
          Pennon alleges six points of error: (1) the evidence is legally and factually
insufficient to support his conviction; (2) the trial court erred in admitting hearsay testimony
as an "outcry" statement; (3) the trial court erred in sustaining the State's objection to
defense counsel's closing argument concerning the absence of DNA evidence; (4) the trial
court erred in allowing the admission of testimony concerning Pennon's possession of
knives; (5) the trial court unconstitutionally limited cross-examination by sustaining the
State's objection regarding the origin of the victim's knowledge about adult sexuality; and
(6) Pennon was denied his constitutional right to effective assistance of counsel. We
sustain the third and fourth points, but find the errors harmless. We overrule the other
contentions and affirm the judgment.
Factual Background 
          The State's evidence showed that Pennon lived with his girlfriend, Antoinette Myers,
and her two children, a twelve-year-old boy and an eleven-year-old girl, Suzanne Smith.


 
On Saturdays in January 2000, Myers worked overtime at her job, and the boy child
attended school. On one Saturday in early January, Pennon and Suzanne were at home
alone. Suzanne testified Pennon forced her to remove her clothing or receive a
"whooping." She further testified that Pennon forced her to touch his penis and that he
attempted to put his penis inside her, indicating the opening in the front of an anatomically
correct doll, but that it would not fit. Pennon then told her to turn over, and he put his penis
in her "back," in her rectum. 
          Almost a month later, in February 2000, Suzanne told her brother of the incident. 
Her brother telephoned their mother at work February 4, 2000, and Suzanne told her,
"Tommy raped me." Myers instructed her children to immediately leave the house and go
to a friend's residence. Myers telephoned the police and went to the friend's residence,
where Suzanne again told her, "Tommy raped me," but more specifically told her, "he stuck
his penis in her rectum and tried to do her vagina, but it wouldn't fit." 
          Suzanne was taken to the hospital for medical care. The medical examination
revealed redness in the outer vaginal area and two small tears in the anus, findings
consistent with sexual assault. The defense introduced evidence the small tears were also
consistent with constipation. 
Legal and Factual Sufficiency of the Evidence
          In our review of the legal sufficiency of the evidence, we employ the standard set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Turner v.
State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991).
          In contrast to legal sufficiency, a factual sufficiency review dictates that the evidence
be viewed in a neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In determining the factual
sufficiency of the evidence to establish the elements of the offense, we view all the
evidence in a neutral light and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong, or so weak as to be clearly
wrong or manifestly unjust. Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129. 
"However, a factual sufficiency review must be appropriately deferential so as to avoid the
appellate court's substituting its own judgment for that of the fact finder." Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996); see Clewis, 922 S.W.2d at 133. "The court's
evaluation should not substantially intrude upon the jury's role as the sole judge of the
weight and credibility of witness testimony." Jones, 944 S.W.2d at 648.
          Pennon contends the evidence is both factually and legally insufficient to establish
his conviction beyond a reasonable doubt. Pennon does not specify which element of the
offense was not supported by factually or legally sufficient evidence, but the inference from
his defense at trial and from his appeal is that the State failed to prove beyond a
reasonable doubt that a sexual assault occurred, or that he committed any sexual assault. 
Pennon contended at trial there was no physical evidence of a sexual assault and no
physical evidence linked him to any sexual assault. He contends on appeal that the only
direct evidence of any sexual contact was the testimony of the minor child. He contends
the doctor's testimony was speculative as to the origin of the injury and constipation was
a possible alternative cause for Suzanne's injuries. He elicited testimony from his mother,
Augusta Mitchell, that Suzanne was experiencing symptoms of constipation during this
time period, and conflicting testimony from Myers that she treated Suzanne for constipation
or diarrhea. He also pointed out that no DNA evidence or other forensic evidence was
established to tie him with any sexual assault. 
          The evidence of Suzanne's constipation was meager, and she testified she was not
constipated during this time period. The credibility of the witnesses is within the province
of the jury. Jones, 944 S.W.2d at 648. The jury was entitled to disbelieve Pennon's
mother and believe Suzanne. There was also no suggestion it was possible to collect DNA
evidence or other forensic evidence at the point in time when the medical examination was
administered. 
          The doctor's examination, which showed anal tears and vaginal redness, showed
injuries consistent with sexual abuse, and were injuries that directly corroborated the
testimony of Suzanne's account of the abuse. Suzanne's testimony was sufficient in itself
because a conviction under Tex. Pen. Code Ann. § 22.021 is "supportable on the
uncorroborated testimony of the victim of the sexual offense . . . ." Tex. Code Crim. Proc.
Ann. art. 38.07 (Vernon Supp. 2004).


 In addition to Suzanne's testimony, Myers testified
as the outcry witness that Suzanne told her, "Tommy raped me," and provided her with
specific details, which were again consistent with the injuries discovered in the medical
examination. Outcry testimony of a child is admitted as an exception to the hearsay rule,
meaning it is considered as substantive evidence, admissible for the truth of the matter
asserted in the testimony. Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App.
1991). 
          Taken in the light most favorable to the verdict, a rational trier of fact could have
found all the elements of the offense beyond a reasonable doubt based on the outcry
testimony, Suzanne's testimony, and the medical examination testimony. Viewing the
evidence neutrally, the great weight and preponderance of the evidence indicates Pennon
did sexually assault Suzanne and we find the evidence was not so weak as to be clearly
wrong or manifestly unjust.
Outcry Testimony
          Pennon contends the testimony from Myers concerning Suzanne's outcry statement
to her was inadmissible because no evidence in the record suggests Pennon received the
proper statutory notice such testimony would be used and because it was a general
allegation of sexual abuse that did not clearly describe the events to which the mother
testified. 
          The outcry statute provides that the first person eighteen years of age or older, other
than the defendant, to whom the child victim makes a statement about the offense, may
testify about the statement, notwithstanding the hearsay rule, if: (1) at least fourteen days
before trial, the party intending to offer the statement notifies the other party of its intent,
provides the other party the name of the witness through whom it intends to offer the
statement, and provides the other party with a written summary of the statement; (2) the
trial court finds, after a hearing, that the statement is reliable based on the time, content,
and circumstances of the statement; and (3) the child testifies or is available to testify. 
Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2004); Smith v. State, 40 S.W.3d
147, 149 (Tex. App.‒Texarkana 2001, no pet.). The requirements of Article 38.072 are
mandatory. Long v. State, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990); see also Dorado
v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992).
          The trial court has broad discretion to determine whether the child's statement falls
within the hearsay exception. The exercise of that discretion will not be disturbed unless
the record shows a clear abuse of discretion. Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000); Tear v. State, 74 S.W.3d 555, 558 (Tex. App.‒Dallas 2002, pet.
ref'd). Stated differently, we will not reverse on appeal unless the trial court's decision is
outside the zone of reasonable disagreement. Weatherred, 15 S.W.3d at 542; Tear, 74
S.W.3d at 558.
          The trial court conducted a hearing before trial to determine whether the outcry
statement was reliable and found it was reliable based on the time, content, and
circumstances of the statement. Defense counsel did not object to the admission of the
statement at pretrial or at trial. 
          Pennon waived any errors in the admission of the outcry statement. Appellate
courts will not consider any error counsel for the accused could have called, but did not
call, to the attention of the trial court at a time when such error could have been avoided
or corrected by the trial court. Tex. R. App. P. 33.1; Ex parte Crispen, 777 S.W.2d 103, 105
(Tex. Crim. App. 1989). As a general rule, appellate courts will not consider an alleged
error that was not first called to the attention of the trial court. Johnson v. State, 878
S.W.2d 164, 167 (Tex. Crim. App. 1994); Black v. State, 816 S.W.2d 350, 367 (Tex. Crim.
App. 1991) (Campbell, J., concurring). This general rule has been incorporated in Tex. R.
App. P. 33.1. In most cases, the requirement of an objection is fundamentally sound and
necessary for the orderly presentation and resolution of alleged trial errors and appellate
issues. See Rogers v. State, 640 S.W.2d 248, 263-64 (Tex. Crim. App. [Panel Op.] 1981)
(op. on reh'g). Because Pennon did not object to the admissibility of the outcry statement,
any error was waived. 
Closing Argument Regarding the Lack of DNA Evidence 
          In closing argument, defense counsel sought to highlight to the jury the lack of
physical evidence linking Pennon to any sexual assault:
[W]hen she was taken to the emergency room and there wasn't any
conclusive proof that it was sexually -- that a sexual assault had occurred. 
Okay? They came in saying that she had told her mother that a sexual
assault had occurred. But our technology nowadays offers us a lot of
different methods to determine whether or not a particular person committed
an offense. A couple of those are DNA tests. 
 
The State objected at this point that counsel was making an argument outside the record. 
The trial court sustained the objection. 
          The four identified areas of acceptable jury argument are: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; and (4) plea for law enforcement. Rocha v. State, 16 S.W.3d 1, 21 (Tex. Crim.
App. 2000); Stell v. State, 711 S.W.2d 746, 748 (Tex. App.‒Corpus Christi 1986, no pet.). 
Arguments referencing matters that are not in evidence and may not be inferred from the
evidence are usually "designed to arouse the passion and prejudices of the jury and as
such are highly inappropriate." Borjan v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). 
In examining challenges to jury argument, an appellate court considers the remark in the
context in which it appears. Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).
          Pennon's counsel was attempting to highlight the lack of physical evidence, and in
particular the lack of DNA evidence, that linked Pennon to any sexual assault. Evidence
existed in the record to substantiate defense counsel's arguments and, therefore, his
argument was a proper summation of the evidence. See Nenno v. State, 970 S.W.2d 549,
559 (Tex. Crim. App. 1998); Lagrone v. State, 942 S.W.2d 602, 619 (Tex. Crim. App.
1997). In defense counsel's cross-examination of the medical doctor who examined
Suzanne, the following testimony was elicited:
          Q.       . . . I didn't notice in your report whether you noticed any traces
of semen or anything of that nature.
 
          A.       In my report, if you don't mind me looking --
 
          Q.       No, no problem.
 
          A.       I state in here, "The patient's genitals are remarkable for some
white dried material in her perineal area," so that's basically all around the
vaginal area and the inner aspects of the thigh. I don't know what it was, but
there was something there. 
 
          Q.       But you didn't take a sample of that and determine that it was
semen?
 
          A.       No.
 
          Q.       And there wasn't any DNA test that you performed to show that
it was Tommy Pennon's -- that there was any semen or any hair fibers or
anything of that nature, that you took, correct? 
 
          A.       No. 
 
The defense counsel's closing argument regarding the lack of DNA evidence to establish
Pennon committed the assault was a proper summation of the evidence elicited from
Suzanne's examining doctor. The trial court therefore erred in sustaining the State's
objection to this argument.
          We must determine the harmfulness of this error. Under the Rules of Appellate
Procedure, we are to disregard errors, defects, irregularities, or variances that do not affect
substantial rights of the accused. Tex. R. App. P. 44.2(b). A "substantial right" is affected
when the error had a substantial and injurious effect or influence in determining the jury's
verdict. King v. State, 953 S.W.2d 266 (Tex. Crim. App. 1997). If, on the record as a
whole, it appears the error "did not influence the jury, or had but a slight effect," we must
conclude the error was not harmful and allow the conviction to stand. Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In considering harm, the entire record must be reviewed to determine whether the
error had more than a slight influence on the verdict. See King, 953 S.W.2d at 271 (citing
Kotteakos v. United States, 328 U.S. 750, 776 (1946)); Reeves v. State, 969 S.W.2d 471,
491 (Tex. App.‒Waco 1998, pet. ref'd). If the court finds the error did have more than a
slight influence on the verdict, it must be concluded that the error affected the defendant's
substantial rights in such a way as to require a new trial. Reeves, 969 S.W.2d at 491. If
the court has grave doubts about the error's effect on the outcome, the case must be
remanded for a new trial. Id. Otherwise, the court should disregard the error. Lopez v.
State, 990 S.W.2d 770, 778 (Tex. App.‒Austin 1999, no pet.); Reeves, 969 S.W.2d at 491.
          This error did not have a substantial and injurious effect or influence in determining
the jury's verdict. The court's ruling did not prevent Pennon's counsel from presenting
evidence with regard to the lack of physical evidence tying him to a sexual assault of
Suzanne. Defense counsel later argued after the objection was sustained that: 
[The State] could have taken samples and sent those off and determined
whether there was any semen present . . . and, even more specifically,
whether or not it was anything related to Tommy Pennon. There would be
hair fiber tests, all kinds of things that technology provides for us today, and
none of that was done and none of those specific evidence [sic] could show
. . . that it was done by Tommy Pennon.  
          The trial court's error in sustaining the State's objection to defense counsel's
argument did not have a substantial or injurious effect on the jury's verdict because
defense counsel was still able to argue the point to the jury. Any weight the jury afforded
the trial court's ruling to sustain the objection in reaching its verdict was, therefore,
necessarily slight.
Evidence Regarding Pennon's Possession of Knives 
          The State, in its case-in-chief, examined Myers on Pennon's possession of knives:
          Q.       . . . . Did Tommy Pennon have knives with him?
 
          A.       Yes.
 
          Q.       What kind of knives did he keep in that house? 
Pennon's counsel objected under Texas Rule of Evidence 403 that it would be extremely
prejudicial to allow this testimony because of its extremely low probative value, since no
allegation was made that a knife was used in the commission of the offense. The State
argued it was relevant because the State anticipated Suzanne would testify she was
threatened, and to establish that Pennon had the means to threaten her. The trial court
overruled Pennon's objection, and the State was permitted to question Myers concerning
what kind of knives Pennon possessed. 
          The State first contends Pennon waived error by failing to make a timely objection. 
A party must make a timely objection in order to preserve an error in the admission of
evidence. Tex. R. App. P. 33.1; Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App.
1995); Johnson, 878 S.W.2d at 167; Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim.
App. 1991); Sattiewhite v. State, 786 S.W.2d 271, 283 (Tex. Crim. App. 1989). An
objection should be made as soon as the ground for objection becomes apparent. 
Johnson v. State, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990), overruled in part on other
grounds, Heitman v. State, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991); Thompson v.
State, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984). Therefore, if a question clearly calls
for an objectionable response, a party should make an objection before the witness
responds. Webb v. State, 480 S.W.2d 398, 400 (Tex. Crim. App.), rev'd on other grounds,
409 U.S. 95 (1972). If a party fails to object until after an objectionable question has been
asked and answered, and such party can show no legitimate reason to justify the delay,
the objection is untimely and error is waived. See Girndt v. State, 623 S.W.2d 930, 934
(Tex. Crim. App. [Panel Op.] 1981). A legitimate reason to justify delay in making an
objection is a showing there was no opportunity to object. Hendrix v. State, 474 S.W.2d
230, 232 (Tex. Crim. App. 1971).
          It appears from the cold record that the ground for objection was apparent when the
first question regarding Pennon's possession of knives was asked. This question,
however, was answered with a simple "Yes," and then a follow-up question was asked, and
Pennon's counsel then objected. Under these facts, we do not consider the objection
waived. Compare Guzman v. State, 521 S.W.2d 267, 269 (Tex. Crim. App. 1975) (error
waived because defendant failed to object until three objectionable questions were asked
and answered). Even if waiver did occur, we will review the substance of defense
counsel's objection in the interest of justice. 
          We review a trial court's decision to admit or exclude evidence for abuse of
discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). Where the trial
court's evidentiary ruling is within the "zone of reasonable disagreement," there is no abuse
of discretion and the reviewing court will uphold the trial court's ruling. Id. 
          Pennon relies on Texas Rule of Evidence 403 on appeal, as he did in the trial court. 
He contends the discussion of knives was highly prejudicial and had little probative value
since no allegation was made that a knife was used in the commission of the offense. He
also asserts the possession of knives had nothing to do with the case and was used only
to inflame the minds of the jury. Rule 403 provides that relevant evidence "may be
excluded if its probative value is substantially outweighed by the danger of unfair
prejudice." Tex. R. Evid. 403. The threshold inquiry in determining the admissibility of
evidence in general and under Rule 403 is its relevance. See Tex. R. Evid. 401, 403. To
be relevant, evidence must be both material and probative. Miller v. State, 36 S.W.3d 503,
507 (Tex. Crim. App. 2001). Evidence is material if it is addressed to the proof of any fact
of consequence to the determination of the action. Tex. R. Evid. 401; Miller, 36 S.W.3d
at 507. If the proponent establishes that the proffered evidence is material, Rule 401 also
requires the proponent to establish the evidence is probative–that it tends to make the
existence of a material fact more or less probable than it would be without the evidence. 
Tex. R. Evid. 401; Miller, 36 S.W.3d at 507.
          The State contends it offered the testimony to show Pennon had the means to
threaten Suzanne, and the evidence, therefore, served to establish the victim's forced
participation in the sexual assault, and further explained her delayed outcry of the sexual
assault. However, there was no testimony showing Pennon threatened Suzanne with a
knife to gain her participation in his offense or that he threatened her with a knife at any
time. Suzanne's testimony was that Pennon threatened her with a "whooping" in order to
gain her participation in the assault. Again, no testimony was ever offered to show Pennon
threatened Suzanne with a knife either before or after the assault. The testimony
regarding Pennon's possession of knives was not relevant as to Suzanne's forced
participation in the sexual assault or in her delayed outcry. It was not compelling to make
a fact of consequence more or less probable, and the trial court abused its discretion in
admitting this evidence.
          The admission of this evidence was, however, harmless. As stated above, under
the Rules of Appellate Procedure, we are to disregard errors, defects, irregularities, or
variances that do not affect substantial rights of the accused. Tex. R. App. P. 44.2(b). We
are governed in our analysis by the same standards discussed above in connection with
the harm of the court's error in sustaining the State's objection to defense counsel's closing
argument. We will apply those same standards in our harm analysis under this point of
error. 
          The testimony regarding Pennon's possession of knives was a very small part of the
State's case against Pennon, and we cannot say it had more than a slight influence on the
verdict. The record reflects the State did not emphasize the knives in presenting its case. 
The time it took the State to develop the evidence was minimal, requiring only three
questions of Myers, and neither party made mention of knives throughout the remainder
of the trial. In addition, the State had ample testimony to show Pennon's guilt and
Suzanne's forced participation in the assault: namely her and her mother's testimony,
along with the medical examination testimony. While the admission of testimony regarding
Pennon's possession of knives was error, that error did not affect a substantial right of the
accused. 
Origin of the Victim's Knowledge about Adult Sexuality

          Pennon contends the cross-examination of Myers was unconstitutionally limited
when he was not permitted to elicit the reason why Myers' oldest daughter, the victim's
sister, was no longer in the household. During the cross-examination of Myers, the
following took place:
          Q.       Ma'am, you do have an older daughter, correct?
 
          A.       I do.
 
          Q.       And what is her name?
 
          A.       Taquala Myers.
 
          Q.       How old is Taquala right now?
 
          A.       She's seventeen.
 
          Q.       She's seventeen. She no longer lives in your house, correct?
 
          A.       She do [sic] not.
 
          Q.      Why is she no longer in your house?
 
          A.       Because she -- 

The State objected at this point on the basis of relevance. A bench conference was
conducted outside the jury's hearing, where the following exchange took place:
          [Defense counsel]:  The only reason we're going into that is what I
mentioned in opening about there being other sexual relations in the house
and the reason why Taquala was no longer in the house, because she was
living with her boyfriend. 
 
          [State]:          Well, what's that got to do with this?
 
          [Defense counsel]:  Because of the educational level, the sexual
knowledge of the child. Our only defense is that --
 
          [Trial Court]: Let me say this to you, . . . . You can ask her if that
daughter -- and she's already identified her -- has moved out and is living
with somebody else and that's as far as you can go. 
 
          It is a basic tenet of appellate practice that error must be preserved at trial for
purposes of appeal.


 Therefore, the right to make an offer of proof or perfect a bill of
exception is absolute where evidence is excluded by a ruling of the trial court. Spence v.
State, 758 S.W.2d 597, 599 (Tex. Crim. App. 1988). The Texas Court of Criminal Appeals
has held a defendant is not limited to one method of showing what excluded testimony
would have been. Gutierrez v. State, 764 S.W.2d 796, 798 (Tex. Crim. App. 1989);
Moosavi v. State, 711 S.W.2d 53, 55 (Tex. Crim. App. 1986). A question and answer
format was envisioned, but the trial court has the discretion to allow a party to make his or
her offer in the form of a "concise statement." Tatum v. State, 798 S.W.2d 569, 571 (Tex.
Crim. App. 1990). 
          Defense counsel offered to the trial court that the excluded testimony would show
Taquala was no longer living in the household, but with her boyfriend, and this was
evidence that Suzanne's origin of knowledge concerning adult sexuality was gained from
her sister. There was no offer of proof, however, that Myers would testify that Taquala was
sexually active with her boyfriend, that Taquala was sexually active in the household before
moving out, or that Suzanne witnessed any sexual activity on the part of her sister. The
question, then, is whether the inference of sexual activity from Taquala living with her
boyfriend was relevant to the case at hand and whether the trial court's denial of further
questioning on this issue was a denial of Pennon's Sixth Amendment right to confrontation.
          The Sixth Amendment to the United States Constitution guarantees a defendant the
right to confront the witnesses against him or her. U.S. Const. amend. VI; Pointer v.
Texas, 380 U.S. 400, 400-01 (1965). A trial court violates a defendant's right of
confrontation if it improperly limits appropriate cross-examination. Carroll v. State, 916
S.W.2d 494, 497 (Tex. Crim. App. 1996). The Confrontation Clause and cross-examination exist in part to ensure fairness in criminal proceedings. Offor v. Scott, 72 F.3d
30, 33-34 (5th Cir. 1995). Through cross-examination, a defendant tests the believability
of a witness and the truth of her or his testimony. Davis v. Alaska, 415 U.S. 308, 316 (1974).
          The right to cross-examination extends to any matter that could reflect on the
witness' credibility. Virts v. State, 739 S.W.2d 25, 28-29 (Tex. Crim. App. 1987). The right
of an accused to cross-examine a testifying state's witness includes the right to impeach
the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent
statements, traits of character affecting credibility, or evidence that might go to any
impairment or disability affecting the witness' credibility. Id. at 29; Alexander v. State, 949
S.W.2d 772, 774-75 (Tex. App.‒Dallas 1997, pet. ref'd). The scope of cross-examination,
therefore, should extend to all facts and circumstances that, when tested by human
experience, tend to show a witness may shade his or her testimony for the purpose of
helping to establish only one side of the cause. Carroll, 916 S.W.2d at 497-98; Alexander,
949 S.W.2d at 774-75.
          Even though a defendant's right to confrontation and cross-examination is
constitutionally safeguarded, the right is not absolute. Chambers v. Mississippi, 410 U.S.
284, 295 (1973); Huff v. State, 897 S.W.2d 829, 839 (Tex. App.‒Dallas 1995, pet. ref'd). 
The trial court retains great latitude in imposing reasonable limitations. Virts, 739 S.W.2d
at 28. The court may properly limit the scope of cross-examination to prevent harassment,
prejudice, confusion of the issues, harm to the witness, and repetitive or marginally
relevant interrogation. Carroll, 916 S.W.2d at 498. When considering whether a trial
court's decision to exclude testimony is error, we must determine whether the trial court
abused its discretion. Love v. State, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993). This
inquiry depends on the facts of each case. Id.; Roberts v. State, 963 S.W.2d 894, 901
(Tex. App.‒Texarkana 1998, no pet.).
              The trial court did not abuse its discretion when it limited cross-examination of the
mother in regard to the sexual activity of her oldest daughter, because such evidence was
minimally relevant and would not have reflected on her credibility or corrected a false
impression. To be relevant, evidence must be both material and probative. Miller, 36
S.W.3d at 507. Evidence is material if it is addressed to the proof of any fact of
consequence to the determination of the action. Tex. R. Evid. 401; Miller, 36 S.W.3d at
507. If the proponent establishes the proffered evidence is material, Rule 401 also
requires the proponent establish the evidence is probative–that it tends to make the
existence of a material fact more or less probable than it would be without the evidence. 
Tex. R. Evid. 401; Miller, 36 S.W.3d at 507.
          Pennon offered the testimony that Suzanne's sister was living with her boyfriend to
show Suzanne gained her sexual knowledge from her sister, not from Pennon. While
evidence that Suzanne gained her sexual knowledge from her sister would be material, the
trial court did not abuse its discretion when it determined the testimony did not address that
issue. The offer of proof was that Myers would testify her oldest daughter lived with her
boyfriend, but no offer was made as to how this would establish the victim's knowledge was
gained from her sister. No offer was made that the oldest daughter had sexual relations
in the house, that the victim witnessed any sexual relations in the house attributable to the
sister, or that the older sister related any such events to her. The testimony that the sister
was living with her boyfriend, therefore, did not attribute Suzanne's sexual knowledge to
her sister or make that fact more probable. 
          Pennon relies on Saglimbeni v. State, 100 S.W.3d 429 (Tex. App.‒San Antonio
2002, pet. ref'd), as support for his position that Myers' testimony created a false
impression that the origin of Suzanne's knowledge of adult sexuality was gained through
Pennon. In that case of first impression, the San Antonio Court of Appeals found that, if
the state is permitted to cross-examine a defendant or a defense witness who creates a
false impression, the defendant should also be permitted to cross-examine a state's
witness who creates a false impression. Id. at 434. In Saglimbeni, 100 S.W.3d at 432-33,
the alleged victim of sexual abuse and his mother testified that, after the defendant abused
him, the victim became depressed and attempted to commit suicide. The victim did not tell
anyone about the abuse until almost two years after the alleged incident. Id. Throughout
the trial, the state highlighted the testimony of the victim and his mother concerning the
effect the defendant's conduct had on the victim as evidence the sexual abuse had, in fact,
occurred. Id. at 432-35. The court of appeals found the defense was erroneously limited
in its cross-examination of the boy and his mother regarding an incident of sexual abuse
to the boy's sister that occurred during the same time period. Id. at 435. The court found
the defense had a right to cross-examine the victim and his mother about whatever else
might have explained his change in behavior. Id. The court found that evidence the sister
had been abused went directly to the victim's and his mother's credibility regarding whether
it was only the abuse by the defendant that caused the victim's change in behavior, as they
so testified, or whether it was the abuse that occurred to his sister that influenced that
change. Id. 
          Pennon contends the denial of cross-examination regarding the sister's living
situation created a false inference that the child's sexual knowledge was gained only from
Pennon. Unlike the facts in Saglimbeni, however, where the witnesses testified regarding
the issue, neither Suzanne nor her mother testified–at trial or on a bill of exception–as to
the origin of Suzanne's knowledge regarding adult sexuality. Because they never raised
the issue, there is no basis to impeach them. The trial court did not abuse its discretion
in limiting cross-examination regarding the older sister's sexual relations, as it was
irrelevant, and, in the absence of evidence to the contrary, would not have revealed
anything in regard to Myers' or Suzanne's credibility or corrected any false impression. 
Ineffective Assistance of Counsel
          Pennon contends six deficiencies by his trial counsel denied his constitutional right
to effective assistance of counsel. Several of the alleged deficiencies regard counsel's trial
strategy. Pennon alleges his counsel failed to object to certain evidence, namely the
"outcry statement," character evidence regarding Pennon's drinking habits, and Myers'
statement Pennon "messed with [Suzanne] again" while she was at the store. Pennon also
contends his trial counsel unnecessarily breached the subject regarding white dried
material in Suzanne's perineal area, and that in his questioning of Pennon's mother he
suggested he expected there would be a punishment phase of the trial when he stated, "I
just really have one question for you at this time of the trial . . . ." In addition, Pennon
contends his trial counsel was ineffective for not moving for a directed verdict at the close
of the State's case-in-chief, as well as at the close of the defense's case. 
          Both the Sixth Amendment and the Texas Constitution confer a right to effective
representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's
performance is ineffective, the conviction cannot stand. The Texas Court of Criminal
Appeals has held that the Texas Constitution does not impose a higher standard than the
Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994);
Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). The Sixth Amendment
standard, established by Strickland, requires a defendant alleging ineffective assistance
of counsel to show that her or his counsel's performance at trial was deficient and that
counsel's deficient performance prejudiced his or her defense. See Strickland v.
Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002).
          To satisfy the deficiency prong of the test, Pennon must prove by a preponderance
of the evidence that his counsel's representation fell below the objective standard of
professional norms. Bone, 77 S.W.3d at 833. There is a strong presumption counsel's
performance was adequate. Id. An appellate court should not "conclude the challenged
conduct constituted deficient performance unless the conduct was so outrageous that no
competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001). "If counsel's reasons for his conduct do not appear in the record and
there is at least the possibility that the conduct could have been legitimate trial strategy,
we will defer to counsel's decisions and deny relief on an ineffective assistance claim on
direct appeal." Ortiz v. State, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) (counsel's
failure to object to state's challenges for cause not ineffective assistance).
          The constitutional right to counsel does not mean errorless counsel. See Ex parte
Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). An ineffective assistance of
counsel claim cannot be based on a difference of opinion concerning strategy. "[T]he
defendant must prove, by a preponderance of the evidence, that there is, in fact, no
plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836.
Failing to object to every instance of improper evidence does not necessarily constitute
ineffective assistance of counsel. Hutchinson v. State, 663 S.W.2d 610, 612 (Tex.
App.‒Houston [1st Dist.] 1983, pet. ref'd). 
          Plausible professional reasons exist for not objecting to the evidence Pennon cites
and for raising the evidence the doctor obtained from Suzanne's medical examination. 
While the phrasing of his last question to Pennon's mother could be construed as an
expectation he would question her again, such construction is not definitive and does not
conclusively demonstrate deficient representation. Further, counsel could have determined
that a motion for directed verdict would have been futile in light of the testimony of the
doctor, Suzanne, and Myers. Ineffective assistance of counsel claims must be based on
the totality of the circumstances. Welborn, 785 S.W.2d at 393. Based on the totality of the
circumstances of this case, Pennon has not overcome the presumption that counsel's
actions were adequate.


 Pennon's contentions are overruled.
          We affirm the judgment. 

                                                                Donald R. Ross
                                                                Justice

Date Submitted:      October 30, 2003
Date Decided:         November 18, 2003

Do Not Publish